[Civ. No. 53678. First Dist., Div. One. May 11, 1984.]

HERMAN HENRY, Plaintiff and Appellant, v.
INTERCONTINENTAL RADIO, INC., et al.,
Defendants and Respondents.

■

**COUNSEL**

Louis A. Highman for Plaintiff and Appellant.

Littler, Mendelson, Fastiff & Tichy, Alan B. Carlson, Stephen D. Pahl and Janice Jablonski for Defendants and Respondents.

**OPINION**

**NEWSOM, J.**—Plaintiff below appeals from a judgment entered in favor of defendants after the sustaining without leave to amend of defendants' demurrer to the complaint.

Defendants/respondents Intercontinental Radio, Inc. (a California corporation) and United Broadcasting Company (a Maryland corporation) own and operate radio station KSOL in San Mateo County. From 1974 until January 4, 1978, plaintiff/appellant Herman Henry was employed under an oral agreement with respondents as station manager of KSOL. On that latter date his employment with the station was terminated, whereupon the present litigation was commenced in San Mateo Superior Court.

As amended, the complaint alleged Henry's discharge to be a tortious breach of the covenant of good faith and fair dealing (count I), a violation of public policy (count II), a violation of California Labor Code sections 1101, 1102[1] (count III), and a violation of California Labor Code sections

---

[1]California Labor Code sections 1101, 1102 provide: "No employer shall make, adopt, or enforce any rule, regulation, or policy:

(a) Forbidding or preventing employees from engaging or participating in politics or from becoming candidates for public office.

(b) Controlling or directing, or tending to control or direct the political activities or affiliations of employees."

"No employer shall coerce or influence or attempt to coerce or influence his employees through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity."

922, 923[2] (count IV). Each of these four counts contained the following allegation: "A significant contributing factor in the decision to terminate Plaintiff was Defendants' perception that Plaintiff was working to increase wages for Black employees and other employees of Radio Station KSOL and to improve the working conditions, status, and opportunities, and that Plaintiff was working to bring a union to the station."

The suit sought lost wages to the date of judgment, damages for emotional distress, etc., punitive damages of $100,000, and attorney's fees and costs. Respondents demurred to this complaint on grounds, inter alia, that appellant's causes of action were preempted by the National Labor Relations Act (NLRA or Act).

The court below preliminarily sustained this demurrer on grounds that jurisdiction over the instant causes of action was preempted under the NLRA; however, it allowed appellant a 10-day grace period to amend the complaint to allege that the National Labor Relations Board (NLRB or Board) had declined in a previous proceeding to exercise jurisdiction over appellant's claims. When no amendment to this effect was offered, judgment sustaining the demurrer without leave to amend was entered.

■ Appellant here contends that sustaining the demurrer was improper because the complaint properly alleges that his termination was wrongful for impermissible reasons separate and distinct from unionization activities (i.e., "political" beliefs concerning equal opportunity, discrimination, and status of black employees). He also contends that preemption would be improper as he is a "supervisory" employee not protected by the retaliatory discharge provisions of the Act.

■ "The animating force behind the doctrine of labor law preemption has been the recognition that nothing could more fully serve to defeat the

---

[2]Sections 922 and 923 state: "Any person or agent or officer thereof who coerces or compels any person to enter into an agreement, written or verbal, not to join or become a member of any labor organization, as a condition of securing employment or continuing in the employment of any such person is guilty of a misdemeanor."

"In the interpretation and application of this chapter, the public policy of this State is declared as follows:

"Negotiation of terms and conditions of labor should result from voluntary agreement between employer and employees. Governmental authority has permitted and encouraged employers to organize in the corporate and other forms of capital control. In dealing with such employers, the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment. Therefore it is necessary that the individual workman have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."

purposes of the Act than to permit state and federal courts, without any limitation, to exercise jurisdiction over activities that are subject to regulation by the National Labor Relations Board." (*Sears, Roebuck & Co.* v. *Carpenters* (1978) 436 U.S. 180, 218 [56 L.Ed.2d 209, 238, 98 S.Ct. 1745] (Brennan, J., dis.) In one of the earliest expressions of the preemption doctrine, the Supreme Court noted the rationale underlying it: "Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid those diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies. . . . A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law." (*Garner* v. *Teamsters Union* (1953) 346 U.S. 485, 490-491 [98 L.Ed. 228, 239-240, 74 S.Ct. 161].)

■ In *San Diego Unions* v. *Garmon* (1959) 359 U.S. 236 [3 L.Ed.2d 775, 79 S.Ct. 773], the Supreme Court formulated guidelines to determine the permissible scope of state regulation of labor-management relations: "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. . . . [¶] At times it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board. . . . [¶] When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with National policy is to be averted." (*Garmon, supra,* at pp. 244-245 [3 L.Ed.2d at pp. 782-783].)

■ These guidelines, however, are not to be applied in procrustean, mechanical fashion. "[I]nflexible application of the doctrine is to be avoided, especially where the State has a substantial interest in regulation of the

conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme." (*Farmer* v. *Carpenters* (1977) 430 U.S. 290, 302 [51 L.Ed.2d 338, 351, 97 S.Ct. 1056].) Thus the preemption doctrine has not been applied where the activity involved was of "merely peripheral concern of the Labor Management Relations Act. . . [or] touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act."[3] (*Garmon, supra,* at pp. 243-244 [3 L.Ed.2d at p. 782].)

■ The decision as to whether to preempt state court jurisdiction, then, "must depend upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies . . . ." (*Vaca* v. *Sipes* (1967) 386 U.S. 171, 180 [17 L.Ed.2d 842, 852, 87 S.Ct. 903].) And, "[t]he critical inquiry, . . . is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to . . . or different from . . . that which could have been, but was not, presented to the Labor Board. For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid." (*Sears, Roebuck & Co.* v. *Carpenters, supra,* 436 U.S. 180, 197 [56 L.Ed.2d 209, 225-226].)

■ In the case at bench, appellant's discharge was "arguably" within the jurisdiction of the NLRB. ■ Despite his contention that his supervisorial status removes him from the protection of the Act, the Board, commencing with the decision in *N.L.R.B.* v. *Better Monkey Grip Co.* (5th Cir. 1957) 243 F.2d 836 (cert. den., 355 U.S. 864 [2 L.Ed.2d 69, 78 S.Ct. 96]), has held, and the federal courts have accepted an unbroken line of decisions, that an employer will be held to have violated the Act when it discharges or otherwise discriminates against a supervisor for union-related factors on the theory that such conduct may have the effect of interfering, not with the right of supervisory employees who are not per se protected under the Act, but with the rights of nonsupervisory employees who may suffer infringement in the exercise of their own rights under the Act. (See, e.g., *Iron Workers* v. *Perko* (1963) 373 U.S. 701 [10 L.Ed.2d 646, 83 S.Ct. 1429]; *N.L.R.B.* v. *Nevis Industries, Inc.* (9th Cir. 1981) 647 F.2d 905, 910-911;

---

[3]Examples cited in *Farmer* as illustrative of this "local interest" exception include: *Linn* v. *Plant Guard Workers* (1966) 383 U.S. 53 [15 L.Ed.2d 582, 86 S.Ct. 657] (malicious libel); *Automobile Workers* v. *Russell* (1958) 356 U.S. 634 [2 L.Ed.2d 1030, 78 S.Ct. 932] (mass picketing and threats of violence); *Machinists* v. *Gonzales* (1958) 356 U.S. 617 [2 L.Ed.2d 1018, 78 S.Ct. 923] (wrongful expulsion from union membership).

*N.L.R.B.* v. *Eagle Material Handling, Inc.* (3d Cir. 1977) 558 F.2d 160, 165; *Pioneer Drilling Co.* v. *N.L.R.B.* (10th Cir. 1968) 391 F.2d 961, 964.)

■ The complained of activity here thus being within the application of the "arguably prohibited" branch of the *Garmon* preemption doctrine, the "critical inquiry" is "whether the controversy presented to the state court is identical to . . . or different from . . . that which could have been, but was not, presented to the Labor Board." (*Sears, Roebuck, supra,* at p. 197 [56 L.Ed.2d at p. 225].) Appellant argues that the controversy here is not sufficiently identical, because the scope of his state causes of action "transcends the scope" of an unfair labor practice: such a practice is established only by proving a retaliatory or coercive motive on the part of the employer, whereas to establish his state cause of action he need only establish that the discharge was wrongful, regardless of whether the employer's motive was coercive or noncoercive.

The argument is similar to one advanced in the Supreme Court's most recent pronouncement on the preemption doctrine, *Local 926, Intern. Union of Oper. Eng.* v. *Jones* (1983) 460 U.S. 669 [75 L.Ed.2d 368, 103 S.Ct. 1453]. There, a supervisory employee filed a charge with the regional director of the NLRB alleging that the union had improperly procured his discharge. The regional director refused to issue a complaint on grounds of insufficient evidence. Instead of appealing to the Board's general counsel, the employee filed suit against the union and the employer in state court (Georgia). The trial court dismissed the complaint, concluding that the action—based upon common law tort—was preempted. The state appellate court reversed the dismissal as to the union. The Supreme Court in turn reversed, holding that the action was preempted by the NLRA. Addressing the argument appellant here proffers and acknowledging that the common law tort cause of action stated two claims—coercive discharge and noncoercively inducing discharge—the court on 460 U.S. at pages 681-682 [75 L.Ed.2d at pages 379-380, 103 S.Ct. at page 1462] opined: "We reject this argument. First, the argument concedes that the state cause of action is preempted to the extent that it covers coercive influence on the employer; and we note that Jones' complaint in the state court alleged that the Union agent had 'intimidated and coerced' Georgia Power into breaching its contract with Jones. Jones thus sought to prove a coerced discharge and breach of contract, the very claim that is concededly preempted. Second, permitting state causes of action for non-coercive interference with contractual relationships to go forward in the state courts would continually require the state court to decide in the first instance whether the Union's conduct was coercive, and hence beyond its power to sanction, or non-coercive, and thus the proper subject of a state suit. Decisions on such questions of federal labor law should be resolved by the Board."

Guided by this reasoning, we find the state causes embodied in counts I and II to be preempted to the same "significant" extent to which the employer's alleged retaliatory purpose was a "contributing factor" to appellant's discharge. And to require the state court to determine that extent "in the first instance" is beyond the proper subject of a state suit and a question of federal labor law best resolved by the Board. ■ "Matters within the exclusive jurisdiction of the Board are normally for it, not a state court, to decide. This implements the congressional desire to achieve *uniform* as well as *effective* enforcement of the national labor policy." (*Local 926, supra,* 460 U.S. at p. 681 [75 L.Ed.2d at p. 379, 103 S.Ct. at p. 1461.)

■ We believe this same analysis to be similarly fatal to count III.[4] Even were we to assume, arguendo, appellant's questionable assertion that his organizational efforts and beliefs regarding working conditions, employment status, and equal opportunity constitute "political activity" within the purview of California Labor Code sections 1101, 1102, the extent to which these activities, rather than his unionization activities (assuming it is possible to separate the two), were "significant contributing factors" to his discharge is a question committed in the first instance to the NLRB. Being unpersuaded that the instant action is of merely peripheral concern to federal labor policy, or that there exists here a compelling interest so deeply rooted in local law as to justify the interference with federal labor law that prosecution of the instant action would entail, we conclude that appellant's causes of action are "arguably" unfair labor practices within the exclusive primary jurisdiction of the NLRB. Absent any allegation that the NLRB had declined to exercise jurisdiction in this matter, the trial court's sustaining of respondents' demurrer on these grounds is correct.

The judgment is affirmed.

Racanelli, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied June 1, 1984, and appellant's petition for a hearing by the Supreme Court was denied July 25, 1984. Bird, C. J., was of the opinion that the petition should be granted.

---

[4]Appellant has apparently conceded that Count IV cannot stand, admitting that it is the most susceptible to preemption as it parallels "counterpart provisions in the NLRA." Such a concession appears proper, as attempts to apply provisions of such "Little Wagner Acts" have been consistently held to be preempted to the extent they potentially conflict with the federal regulatory scheme. (See *Sears, Roebuck, & Co.* v. *Carpenters, supra,* 436 U.S. 180, at p. 192 [56 L.Ed.2d 209, at p. 222]; *La Crosse Tel. Corp.* v. *Wis. Board* (1949) 336 U.S. 18 [93 L.Ed. 463, 69 S.Ct. 379]; *Bethlehem Co.* v. *State Board* (1947) 330 U.S. 767 [91 L.Ed. 1234, 67 S.Ct. 1026].)