[No. G001341. Fourth Dist., Div. Three. Apr. 8, 1986.*]

THOMAS G. FRIDAY, Plaintiff and Appellant, v.
HUGHES AIRCRAFT COMPANY, Defendant and Respondent.

---

*Review granted July 24, 1986. Review dismissed and opinion ordered published April 30, 1987.

COUNSEL

Thomas G. Friday, in pro. per., and Douglas C. Sohn for Plaintiff and Appellant.

Latham & Watkins, Thomas L. Pfister and Russell F. Sauer, Jr., for Defendant and Respondent.

O'Melveny & Myers, Charles G. Bakaly, Jr., Debra L. Boyd and Donald B. Wallace as Amici Curiae on behalf of Defendant and Respondent.

OPINION

**WALLIN, J.**—Thomas G. Friday filed a complaint in the superior court against his former employer, Hughes Aircraft Company, alleging causes of action for "bad faith/wrongful termination of employment" and intentional infliction of emotional distress. The court granted Hughes' motion for summary judgment on two alternative grounds: (1) Friday's state law complaint was preempted by section 301 of the Labor Management Relations Act (LMRA) (29 U.S.C.A. § 141(a)), and (2) the prior determination by the California Unemployment Insurance Appeals Board that Friday had been terminated for cause collaterally estopped him from relitigating that issue. Friday's motion for reconsideration was apparently granted, but after reconsideration the court affirmed its prior ruling.[1] Friday appeals the judgment entered against him, contending his action falls within several exceptions to the preemption doctrine and is not barred by collateral estoppel. We find both causes of action are preempted by the federal statute and affirm; thus, we do not reach the collateral estoppel issue.

---

[1]Friday appeared in propria persona on his motion for reconsideration and submitted evidence that he had filed various administrative complaints with the National Labor Relations Board, the Department of Labor, and the California Fair Employment and Housing Commission. Hughes contends these complaints were not properly before the trial court on reconsideration because they were not submitted by declaration. However, it appears the trial court may have considered them. We have therefore reviewed them and find they have no bearing on the issues before us.

I

The declarations submitted by the parties establish the following facts: Friday was an employee of Hughes for approximately 28 years; for the last six years his job title was "chemical storekeeper." He was a member of a collective bargaining unit represented by Electronic and Space Technicians Local No. 1553, AFL-CIO. ■■ ■■ A collective bargaining agreement governed the terms and conditions of employment and included a grievance and arbitration mechanism for resolving employee disputes.[2]

In 1976, Friday injured his lower back while on the job. Although his own doctor gave him a clean bill of health, Hughes' doctor put him on medical restriction, limiting the amount of weight he could lift. In 1978, Friday filed two grievances alleging he was not being allowed to work during regular or overtime hours due to what he claimed was an unnecessary restriction. In December of 1978, Friday was relocated from his previous place of work to a basement room.

In February of 1980, Friday was twice reprimanded for refusing to do assigned work; the second time he received a five-day suspension. He filed a grievance, contending the suspension was unfair and a violation of the collective bargaining agreement. Friday subsequently filed two more grievances for harassment and lack of overtime. He also filed a complaint with the U. S. Department of Labor regarding his medical restriction, lack of overtime and denial of promotions. Finally, on April 7, 1980, Friday was suspended for refusing to obey orders; he was terminated on April 11. He did not file a grievance for his discharge.

In his declaration in opposition to the motion for summary judgment, Friday stated he was refused promotions during the five-year period prior to his termination. During that time, he had complained "on various occasions" to his supervisors "regarding what [he] perceived to be the haphazard and dangerous handling of volatile chemicals." He believed these complaints were in part responsible for the denial of promotions and overtime. He stated the basement room where he worked was filled with toxic fumes and had no ventilation and a wet floor. He believed his assignment there was to harass him and force him to leave the company. He stated he refused to follow orders because he knew the company was going to eliminate his job position and he felt it was part of a pattern of harassment.

---

[2]Although Friday was not a member of the union, he was a member of the bargaining unit because his position was specifically covered by the collective bargaining agreement. Therefore, he was bound by its terms and conditions. (*Emporium Capwell Co.* v. *Community Org.* (1975) 420 U.S. 50 [43 L.Ed.2d 12, 95 S.Ct. 977]; *J.I. Case Co.* v. *Labor Board* (1944) 321 U.S. 332 [88 L.Ed. 762, 64 S.Ct. 576].)

## II

A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) Looking at the facts presented by both parties, and liberally construing those presented by Friday (*Slobojan* v. *Western Travelers Life Ins. Co.* (1969) 70 Cal.2d 432, 436-437 [74 Cal.Rptr. 895, 450 P.2d 271]), we conclude the causes of action for "bad faith/wrongful termination of employment" and intentional infliction of emotional distress are both preempted by section 301 of the LMRA.

Section 301 states: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . ., or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties . . . ." (29 U.S.C.A. § 185(a).)[3]

The collective bargaining agreement applicable to Friday's dispute contains the customary provisions that grievance and arbitration procedures are the exclusive remedy for any breach. "To escape this exclusivity employees frequently attempt to avoid federal law by basing their complaint on state law . . . . Nevertheless, many of these cases are in fact section 301 suits and as such are governed by federal law." (*Olguin* v. *Inspiration Consol. Copper Co.* (9th Cir. 1984) 740 F.2d 1468, 1472.)

*Textile Workers* v. *Lincoln Mills* (1957) 353 U.S. 448 [1 L.Ed.2d 972, 77 S. Ct. 912] held section 301 was a congressional mandate to the federal courts to fashion a body of federal common law for the enforcement of collective bargaining agreements. *Teamsters Local* v. *Lucas Flour Co.* (1962) 369 U.S. 95 [7 L.Ed.2d 593, 82 S.Ct. 571] first announced the preemptive effect of section 301 and explained "in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." (*Id.,* at p. 104 [7 L.Ed.2d at p. 600].) These principles were restated in *Franchise Tax Bd.* v. *Laborers Vacation Trust* (1983) 463 U.S. 1 [77 L.Ed.2d 420, 103 S.Ct. 2841]: "[T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." (*Id.,* at p. 23 [77 L.Ed.2d at pp. 439-440, 103 S.Ct. at pp. 2853-2854].)

---

[3]All future references to Section 301 are references to 29 United States Code Annotated section 185(a).

In *Allis-Chalmers Corp.* v. *Lueck* (1985) 471 U.S. 202 [85 L.Ed.2d 206, 105 S.Ct. 1904], the Supreme Court recently discussed the preemption of state law tort claims by section 301. The employee brought an action in state court for bad faith handling of a claim under a disability insurance plan included in a collective bargaining agreement. He alleged the carrier and his employer unreasonably withheld payments, resulting in his emotional distress, physical impairment, pain and suffering and financial detriment. Holding the tort claim was preempted, the court stated: "If the policies that animate § 301 are to be given their proper range, however, the pre-emptive effect of § 301 must extend beyond suits alleging contract violations. These policies require that 'the relationships created by [a collective-bargaining] agreement' be defined by application of 'an evolving federal common law grounded in national labor policy.' [Citation.]" (*Id.,* at pp. 210-211 [85 L.Ed.2d at p. 215, 105 S.Ct. at p. 1911].) Cautioning that section 301 was not intended to preempt "state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract," the court fashioned the following test: "Our analysis must focus, then, on whether the [state] tort action for breach of the duty of good faith as applied here confers non-negotiable state law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract. If the state tort law purports to define the meaning of the contract relationship, that law is pre-empted. [¶] . . . . [T]he question whether the [state] tort is sufficiently independent of federal contract interpretation to avoid pre-emption is, of course, a question of federal law." (*Id.,* at pp. 213-214 [85 L.Ed.2d at pp. 216-217, 105 S.Ct. at pp. 1912-1913].)

III

Friday argues even if his claims are recharacterized as section 301 claims, he is exempted from the requirement that he exhaust his remedies under the collective bargaining agreement because the union breached its duty to him of fair representation. *Vaca* v. *Sipes* (1967) 386 U.S. 171 [17 L. Ed.2d 842, 87 S.Ct. 903] held an employee could bring an action for wrongful termination against his employer in state court if he could show he was prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance. In *Conn* v. *National Can Corp.* (1981) 124 Cal.App.3d 630 [177 Cal.Rptr. 445], the employees' allegations of breach of fair representation survived a motion for summary judgment. They affirmatively pleaded extensive facts and submitted a declaration showing union activity which included "refusal to act, purposeful conceal-ment, and false representations." (*Id.,* at p. 634.)

Friday, however, did not initiate a grievance procedure for his discharge and has made no significant attempt to show it would have been futile. His

declaration stated he did not file a grievance because he believed it would be a "useless act" and because he had not been successful with "any previous effort to pursue a grievance." This is insufficient to support a claim that the union had breached its duty to Friday. (See *Vaca* v. *Sipes, supra,* 386 U.S. at pp. 193-195 [17 L.Ed.2d at pp. 859-861]; *Sarro* v. *Retail Store Employees Union* (1984) 155 Cal.App.3d 206, 213-214 [202 Cal.Rptr. 102].)

## IV

Friday's first cause of action for "bad faith/wrongful termination of employment" is based on state tort law. (See *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330]; *Cleary* v. *American Airlines* (1980) 111 Cal.App.3d 443 [168 Cal.Rptr. 722]; *Patterson* v. *Philco Corp.* (1967) 252 Cal.App.2d 63 [60 Cal.Rptr. 110].) A state law claim for wrongful termination by a unionized employee is generally held to be preempted by section 301 because the "right not to be dismissed without just cause is essentially equivalent to a right created by the collective bargaining agreement." (*Olguin* v. *Inspiration Consol. Copper Co., supra,* 740 F.2d at p. 1474; see also *Oglesby* v. *RCA Corp.* (7th Cir. 1985) 752 F.2d 272; *Harper* v. *San Diego Transit Corp.* (9th Cir. 1985) 764 F.2d 663; *Buscemi* v. *McDonnell Douglas Corp.* (9th Cir. 1984) 736 F.2d 1348; *Fristoe* v. *Reynolds Metals Co.* (9th Cir. 1980) 615 F.2d 1209.)

Friday relies on the exception to this general rule created in *Garibaldi* v. *Lucky Food Stores, Inc.* (9th Cir. 1984) 726 F.2d 1367. In that case, a cause of action for wrongful termination survived federal preemption where the employee was terminated for reporting the delivery of spoiled milk in violation of California law. The court found California had a strong interest in protecting the employee's "whistle blowing" to promote the health and safety of its citizens. Thus, it concluded "California's interest in providing a cause of action for violation of public policy or a statute is the enforcement of the underlying statute or policy, not the regulation of the employment relationship." (*Id.,* at p. 1374.)

Friday attempts to bring himself within the holding of *Garibaldi* by emphasizing this statement in his declaration: "On various occasions during the last several years of my employment I had complained to my supervisors regarding what I perceived to be the haphazard and dangerous handling of volatile chemicals. I believed that the failure to grant me overtime as well as promotions to which I believe I was entitled was in part due to my complaints regarding these facts." He argues it should be reasonably inferred from this statement that Hughes terminated him for reporting

violations of the hazardous waste provisions of the Health and Safety Code. (Health & Saf. Code, § 25100 et seq.)

We find the facts reported in Friday's declaration imply nothing more than complaints about the safety of his workplace, a subject expressly covered by article XXI of the collective bargaining agreement. Friday did not report the clear violation of a specific statute for the protection of the general public, as in *Garibaldi,* but complained of what he perceived to be unsafe internal practices in the handling of chemicals. Unlike *Garibaldi,* where the maintenance of the state law cause of action was justified "to assist in the enforcement of statutes or policies extrinsic to the employment relationship" (*Olguin* v. *Inspiration Consol. Copper Co., supra,* 740 F.2d at p. 1475), allowing Friday's wrongful termination action to go forward would involve consideration of the terms of the labor contract and directly interfere with federal regulation of disputes arising out of collective bargaining agreements.

V

Friday's second cause of action is for intentional infliction of emotional distress. He contends the alleged general pattern of harassment, especially his assignment to work in an unventilated room with chemical fumes and a damp floor, constitutes outrageous conduct on the part of Hughes.

In *Farmer* v. *Carpenters* (1977) 430 U.S. 290 [51 L.Ed.2d 338, 97 S.Ct. 1056], a union member brought an action against the union alleging it had discriminated against him in hiring hall practices in breach of the collective bargaining agreement and it had caused him emotional distress by threats and intimidation. The Supreme Court held the state tort action for infliction of emotional distress survived preemption by the National Labor Relations Act (29 U.S.C. A. § 167) where the basis for the state tort was either 1) unrelated to the employment discrimination or 2) a function of the particularly abusive manner in which the alleged discrimination was accomplished or threatened rather than a function of the actual or threatened discrimination itself. (*Id.,* at p. 305.)

The *Farmer* decision has been construed as creating a narrow exception to federal preemption. (*Truex* v. *Garrett Freightlines, Inc.* (9th Cir. 1986) 784 F.2d 1347; *Olguin* v. *Inspiration Consol. Copper Co., supra,* 740 F.2d at p. 1475; *Magnuson* v. *Burlington Northern, Inc.* (9th Cir. 1978) 576 F.2d 1367.) In *Olguin,* the Ninth Circuit held the employee's tort claim did not survive section 301 preemption because he did not show "that any of the

acts alleged in his emotional distress complaint were not disputes concerning employment or work conditions." (740 F.2d at p. 1476.) In *Truex,* the employee based his state claims for harassment and intentional infliction of emotional distress on allegations of excessive surveillance, abusive language, "set ups" for termination and unjustified reassignment of work duties on the part of his employer. The court found the claims were not excepted from section 301 preemption by *Farmer* because the facts were not unrelated to a duty established by the collective bargaining agreement and would not support a finding of outrageous conduct. (*Truex, supra,* 784 F.2d at pp. 1350-1352.) In *Miller* v. *United Airlines, Inc.* (1985) 174 Cal.App.3d 878 [220 Cal.Rptr. 684], the employee's tort claims, including one for emotional distress, were preempted by the Railway Labor Act (45 U.S.C.A. § 151) where she alleged outrageous conduct by her employer during her evaluation process and while she was pursuing her grievances under the collective bargaining agreement. The court found the agreement "[set] forth the procedures for resolving such a dispute" and thus the claims involved the interpretation of the agreement itself. (*Id.,* at p. 889.) (See also *Carter* v. *Smith Food King* (9th Cir. 1985) 765 F.2d 916.)

Likewise, the facts underlying Friday's emotional distress claim are all complaints about matters covered in the collective bargaining agreement: safety, unfair work assignments, work restrictions and denials of promotion and overtime. Evaluation of his claim will necessarily involve reference to the relevant sections of the agreement to determine the parties' rights under it. Thus, the tort claim is "inextricably intertwined with consideration of the terms of the labor contract" (*Allis-Chalmers* v. *Lueck, supra,* 471 U.S. at p. 213 [85 L.Ed.2d at p. 216, 105 S.Ct. at p. 1912]) and is preempted by section 301.

The judgment is affirmed. Hughes shall recover its costs on appeal.

Crosby, Acting P. J., and Sonenshine, J., concurred.