[No. E004399. Fourth Dist., Div. Two. Aug. 22, 1988.]

RICHARD J. BALOG, Plaintiff and Appellant, v.
LRJV, INC., et al., Defendants and Respondents.

COUNSEL

Bruce M. Leyden for Plaintiff and Appellant.

Howard M. Knee for Defendants and Respondents.

OPINION

McDANIEL, J.—

### FACTS

Richard Balog (Balog) worked for 21 years as a safety valve and angle valve repairperson at the GATX Corporation in Masury, Ohio. When GATX closed its plant, he lost his job. Like many other workers from the Midwest and other depressed areas of the country, he looked for work in California.

Balog was ultimately hired by LRJV and Railguard to work as a supervisor at their Lundeen Railcar Repair Services business in Daggett, California. Lundeen Railcar Repair Services cleaned and repaired railroad cars, particularly those which were being used to transport toxic and hazardous materials.

Less than three months after being hired, Balog was fired from his job as supervisor. He thereafter filed a complaint for damages alleged to have resulted from a retaliatory discharge and from intentional infliction of emotional distress. The suit named Lundeen Corporation, Norman Oley, the vice president and general manager of the Daggett operation, Earl L. Krebs, the Daggett facility's plant superintendent, and numerous Does. In his complaint, Balog alleged he was told he was being terminated in retaliation for: (1) his complaints that defendants were not complying with minimum safety standards and his refusal to assign employees to jobs which exposed them to the risks resulting from failure to meet such safety standards [Paragraph 12(a) of the complaint]; (2) his refusal to cooperate with defendants in their disposition of toxic and hazardous materials as required by law and his requests that they do so [Paragraph 12(b) of the complaint]; (3) his refusal to falsify accident investigation reports at defendants' requests [Paragraph 12(c) of the complaint]; (4) his complaints that defendants refused to provide him with required "Car Shopping Instruction" sheets which were intended to inform workers of the nature of the material which had been transported in the railroad cars in which they were working so

they could take appropriate safety precautions, and Balog's subsequent refusal to assign workers to work on cars for which no sheets had been provided and which appeared to be hazardous [Paragraph 12(d) of the complaint]; and (5) his refusal to make up false and/or trivial reasons to discharge probationary employees so as to allow defendants to discharge such employees to prevent them from joining the United Steelworkers of America union with which the company had a collective bargaining agreement [Paragraph 12(e) of the complaint].

Thereafter, and apparently before defendants answered the complaint, Balog filed both a first and second amended complaint. The first amended complaint reframed the cause of action for retaliatory discharge as a cause of action for wrongful termination, added causes of action for breach of the covenant of good faith and fair dealing, negligent infliction of emotional distress, and loss of consortium (on the part of Barbara Balog, Balog's wife, who had been added as a plaintiff). The first amended complaint also added an allegation that Balog had been hired pursuant to an oral contract of employment under which his employment was to continue for an indefinite period so long as he performed in a satisfactory manner, and that he could only be discharged for "good cause proven" and then only in accord with the stated policies of the company; that he had been told that he would be supplied with all needed equipment and assistance to expand the company's angle and safety valve operations, that he was asked to do the various illegal and unsafe acts referred to above, and that to have acceded to defendants' wishes that he commit such acts would have been in violation of the public policy of the State of California. More particularly, in regard to acts related to probationary employees, the first amended complaint alleged that defendants' requirement that Balog fire probationary employees just before the end of their probationary period would have been in violation of public policy in California, and would also have been in violation of the provisions of the collective bargaining agreement, and that defendants' requirement that Balog falsify work performances of such employees so as to justify their termination would have been in violation of public policy.

Balog's second amended complaint named LRJV Incorporated and Railguard, Inc., as defendants, and alleged that they were doing business under the fictitious name of Lundeen Railcar Repair Services. Unlike the first amended complaint, the second amended complaint was not verified. The second amended complaint reiterated the same allegations set out in paragraph 12 of the original complaint.

Defendants answered the second amended complaint, and raised as an affirmative defense that Lundeen Railcar Repair Services was an employer within the meaning of the National Labor Relations Act (29 U.S.C. § 151 et

seq.), that Balog's allegations regarding acts involving probationary employees arguably implicated section 8 of that Act (29 U.S.C. § 158), and that the claim stated in paragraph 12(e) of Balog's complaint was subject to the primary jurisdiction of the National Labor Relations Board (NLRB).

Defendants, following some discovery, moved for summary judgment against Balog based on the following facts: (1) That Balog was employed by Lundeen Railcar Repair Services; (2) That Balog was a supervisorial employee who supervised Lundeen's production and maintenance employees; (3) That such employees were in a bargaining unit represented by the United Steelworkers of America, AFL-CIO; (4) That Balog contended that he was discharged for two reasons, "to wit, because he once refused to terminate an employee, Bill Butler (Butler), in order to prevent Butler from becoming a member of the Union"; (5) That "Balog estimates that 60 percent of Lundeen's decision to discharge him was because of his refusal to perform hazardous work and 40 percent was because of his refusal to terminate Butler"; (6) That Balog had not filed an unfair labor practice charge with the NLRB to contest his discharge.

Based on these facts, defendants urged that Balog's causes of action were preempted by the National Labor Relations Act (NLRA or the Act).

Balog admitted that facts (1), (2), (3) and (6) were undisputed. Plaintiff denied that fact (4) was undisputed, and asserted that his deposition and attached declaration indicated that defendants' decision to terminate him had been motivated by incidents which had occurred before his refusal to terminate Butler, but that his refusal to fire Butler was also a factor in his termination. According to Balog's declaration, the immediate cause of his termination was his refusal, because of the lack of safety equipment, to assign one of his crew to paint the inside of a car which contained toxic gases. When he refused to do so, defendant Krebs told him that then Balog himself would have to do the painting. Balog refused, saying he would not even send a dog into the car, and Krebs then fired him for insubordination. Balog concluded that, in his opinion, neither the Butler incident nor the painting incident would have resulted in his termination, but that they were seized upon by the defendants as a ruse in order to terminate him for his continued protests against safety violations.

Balog also denied that fact (5) was undisputed, pointing out that the 40 and 60 percent figures had been suggested by defendants' counsel after Balog had advised him that he could only guess about the estimated figures as to which defendant's counsel was questioning him.

Defendants' motion for summary judgment was denied. The court concluded that there were substantial issues of fact in dispute in that the

excerpt from plaintiff's deposition which set forth the reasons he believed he had been terminated was based on speculation and conjecture, and the court could not conclude that the matter was indeed preempted by the National Labor Relations Act.

Having lost their motion for summary judgment, defendants then filed a motion for judgment on the pleadings on the ground that "the wrongs alleged arguably constitute unfair labor practices under the National Labor Relations Act," and that therefore the NLRB had exclusive jurisdiction which preempted Balog's stated causes of action.

Balog opposed the motion for judgment on the pleadings, and stated, assuming his allegations regarding discrimination against probationary employees for the purpose of preventing their admission into the union was the reason his action might be preempted, that he would amend the complaint to delete those allegations. Defendants argued that plaintiff could not truthfully delete those allegations, and that he could not thus bypass the preemption issue.

The defendants' motion was granted, and judgment was entered in favor of defendants and against plaintiff, the court concluding, as a matter of law, that Balog's action was preempted. Balog filed a timely notice of appeal, and now urges that the judgment must be reversed because the NLRA does not preempt his action and because he should have been allowed to amend his complaint, if necessary, so as to avoid the preemptive effect of the NLRA.

## DISCUSSION

The National Labor Relations Act (29 U.S.C. § 151 et seq., hereinafter NLRA) was designed to "eliminate the causes of certain substantial obstructions to the free flow of commerce . . . by encouraging the practice and procedure of collective bargaining, and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." (29 U.S.C. § 151.)

The NLRA provides: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an

agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title." (29 U.S.C. § 157.)

The NLRA defines certain actions by employers as being unfair labor practices (29 U.S.C. § 158) over which the National Labor Relations Board (NLRB) has exclusive jurisdiction. (29 U.S.C. § 160.) Certain of these unfair labor practices are relevant here: an employer may not interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 (29 U.S.C. § 158(a)(1)), an employer may not, by discrimination in regard to hire or tenure of employment or any term or condition of employment, encourage or discourage membership in any labor organization (29 U.S.C. § 158(a)(3)), and an employer may not discharge or otherwise discriminate against an employee because he has filed charges or given testimony under the Act. (29 U.S.C. § 158(a)(4).)

The NLRA also defines employees as not including any individual employed as a supervisor. (29 U.S.C. § 152(3).)

According to defendants, Balog's action is preempted by the NLRA because it arguably involves one or more unfair labor practices, i.e., that (1) defendants were interfering with their employees' right to join the union, and discouraging union membership, by ordering Balog to falsify employee reports so as to give defendants justification to terminate probationary employees before they were eligible to join the union, and (2) defendants' discharge of Balog was itself an unfair labor practice under 29 United States Code section 158(a)(4).

■ According to Balog, his action is *not* preempted, because he is a supervisorial employee who is not protected by the NLRA. (29 U.S.C. § 152(3).) Balog's circumstances, however, fall within a case-law-created exception to section 152(3). In *Parker-Robb Chevrolet, Inc.* (1982) 262 N.L.R.B. 402 [110 L.R.R.M. 1289] enforced, *Automobile Salesmen's Union Local 1095, etc.* v. *N.L.R.B.* (1983) 711 F.2d 383 [229 App.D.C. 105] the NLRB stated that "In the final analysis, the instant case, and indeed all supervisory discharge cases, may be resolved by this analysis: the discharge of supervisors is unlawful when it interferes with the right of employees to exercise their rights under Section 7 of the Act, as when they give testimony adverse to their employers' interest *or when they refuse to commit unfair labor practices.*" (110 L.R.R.M. at pp. 1290-1291, italics added.) The *Parker-Robb* board specifically differentiated between the unlawful (and thus preempted) discharge of supervisors who refuse to commit unfair labor practices and the lawful (and therefore not preempted) discharge of supervisors for their participation in union or concerted activities. Balog's complaint alleges that one reason for his termination was his refusal to commit

unfair labor practices, and therefore, despite the fact he was a supervisor, his action, in our view, if premised solely on an allegation that he was terminated for refusing to commit an unfair labor practice, would be preempted according to *Parker-Robb* and several California cases. (*Bassett v. Attebery* (1986) 180 Cal.App.3d 288 [225 Cal.Rptr. 399]; *Henry v. Intercontinental Radio, Inc.* (1984) 155 Cal.App.3d 707 [202 Cal.Rptr. 328].)

Balog, however, argues that he should be allowed to amend his complaint so as to delete any references to his refusal to commit unfair labor practices as being a basis for his termination, in order that he can proceed against his former employer solely on the ground that he was terminated for failing to participate in the various other safety violations alleged in his complaint.

Defendants, on the other hand, urge that such an amendment cannot be allowed when it contradicts an admission in the original complaint, unless the plaintiff can show a mistake or other excuse for changing the allegation. (See, e.g., *American Advertising & Sales Co. v. Mid-Western Transport* (1984) 152 Cal.App.3d 875, 878 [199 Cal.Rptr. 735].) According to defendants, allowing Balog to amend his complaint would create a direct conflict with Balog's deposition testimony in which he stated that one of two reasons he was fired was because he refused to fire a certain Bill Butler so as to prevent Butler from joining the union, the other reason being that he refused to send his men or himself into a railroad car filled with dangerous fumes, with this later event occurring immediately before his on-the-spot termination.

■ In our opinion, both Balog and defendants have missed the point. Briefly: state court actions premised on activities which constitute unfair labor practices under the NLRA are preempted. State court actions premised on activities which "arguably" constitute unfair labor practices under the Act are also preempted, for it is essential to the even-handed administration of the Act that such determinations (is the activity complained of actually an unfair labor practice?) be left in the first instance to the NLRB. (*San Diego Unions v. Garmon* (1959) 359 U.S. 236, 244-245 [3 L.Ed.2d 775, 783, 79 S.Ct. 773, 779]; see also *Lingle v. Norge Division of Magic Chef, Inc.* (1988) 486 U.S. 399, 409, fn. 8 [100 L.Ed.2d 410, 421-422, 108 S.Ct 1877], quoting *Garmon*.) The rationale behind preemption is that it is desirable to have a uniform national policy related to collective bargaining and unionization, and that to allow states to regulate matters related to collective bargaining and unionization would create the possibility of " 'diversities and conflicts likely to result from a variety of local procedures and attitudes towards labor controversies. . . . [because a] multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law. . . .' "

(*San Diego Unions* v. *Garmon, supra,* 359 U.S. at p. 243 [3 L.Ed.2d at pp. 781-782], quoting *Garner* v. *Teamsters Union* (1958) 346 U.S. 485, 490, 491 [98 L.Ed. 228, 239, 74 S.Ct. 161].)

■ However, it has always been an equally important proposition that "due regard for the presuppositions of our embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy, has required us not to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act. [Citation.] Or where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." (*San Diego Unions* v. *Garmon, supra,* 359 U.S. at pp. 243-244 [3 L.Ed.2d at p. 782, 79 S.Ct. at p. 779], fn. omitted.)

*Here, Balog has alleged that he was fired for five distinct reasons, only one of which constitutes an unfair labor practice under the NLRA.* The other reasons all involve various violations of California health and safety regulations, which are not even "arguably" unfair labor practices, as they in no way implicate collective bargaining or unionization. Defendants' alleged conduct in terminating Balog for refusing to violate these regulations, and for thereby refusing to endanger the health and safety of California workers, is clearly conduct which touches interests deeply rooted in local feeling and responsibility, and which is, if of any concern of the NLRA, of only peripheral concern. Therefore, to the extent that Balog's causes of action are premised on such conduct, they are not preempted by the Act.

■ The question thus arises as to whether the mere fact that *one* of defendants' motives for firing Balog *may* have been, or was, his refusal to commit an unfair labor practice, mandates that Balog's state cause of action must be dismissed. In our view, deference to the rationale behind the doctrine of preemption does not require such a drastic result. Instead, we are of the opinion that so long as defendants' intentional wrongful conduct was motivated by impermissible considerations other than solely a desire or plan to interfere with collective bargaining or unionization, they may be held liable under state law.

■ When a defendant commits a wrongful act intentionally (whether the act constitutes a crime, an intentional tort, or both), that act may be considered to be the legal cause of the wrong complained of even though the wrongful act was merely a contributing cause and even though another cause also contributed to the injury. (*People* v. *Lewis* (1899) 124 Cal. 551,

554-559, 560 [57 P. 470]; *Tate v. Canonica* (1960) 180 Cal.App.2d 898, 904 [5 Cal.Rptr. 28].)

When a crime or intentional tort is premised on an act which is wrongful only if committed for an illegal reason, then this same principle should apply to wrongful reasons as well as to wrongful acts: when a defendant wrongfully discharges a plaintiff for several illegal reasons (e.g., because the plaintiff is Black, is a woman, and is over the age of 40), then each illegal reason may be considered to be the legal cause of the wrongful discharge even though each illegal reason was merely a contributing reason and even though another reason also contributed to the decision to discharge the plaintiff.

 The rationale behind holding that the combination of an unfair labor practice-related reason with other illegal reasons for termination should not mandate preemption of the plaintiff's cause of action based on the other illegal reasons is illustrated by an analogous case, *Singleton v. Perry* (1955) 45 Cal.2d 489 [289 P.2d 794].

In *Singleton,* the defendant had sworn out criminal complaints against the plaintiff, who had thereupon been arrested in Ohio and returned to California. After all charges had been dismissed following a preliminary hearing, the plaintiff instituted two civil actions against the defendant alleging, inter alia, malicious prosecution. The plaintiff was successful in only one of the two suits, and the defendant appealed from that judgment. The judgment which had been adverse to the plaintiff had become final, because plaintiff had not appealed it, so that the California Supreme Court, upon review of the judgment in the plaintiff's favor, was faced with a conclusive adjudication that one of the criminal complaints against the plaintiff had been based on probable cause. Nonetheless, the court concluded that the defendant in the appeal before it could properly be held liable for malicious prosecution if only *one* of the several criminal charges was found to have been made without probable cause.

In reaching this conclusion, the court relied on *Boogher v. Bryant* (1885) 86 Mo. 42, 49, 50: " 'The authorities show, as we think, that, in order to maintain an action like this [malicious prosecution], *"it is not necessary that the whole proceeding be utterly groundless, for, if groundless charges are maliciously [,] and without probable cause, coupled with others which are well founded, they are not on that account the less injurious, and, therefore, constitute a valid cause of action."* [*Citations.*] . . . [¶] [*I* ]*t is manifest that whatever difficulty, or impossibility even, there may be, in discriminating between the injuries, resulting from the good and bad counts, thus improperly blended, is chargeable to the wrongful act of the defendants themselves, and,*

*upon principle, it would seem that they should not now be permitted to plead their own wrong in their own justification. If, by their wrongful acts, the plaintiff could not readily apportion his expenses, or dissect his trouble, care, anguish and vexation, and apportion them among the five counts in the information, it would seem cruel to hold that no basis could, therefore, be afforded by which to adjust the damages to the injuries sustained. [¶] Indeed, it would seem almost a mockery to hold that, by uniting groundless accusations with those for which probable cause might exist, the defendants could thereby escape liability, because of the injured party's inability to divide his damages between the two with delicate nicety.* Such, we think, is not the law.'" (*Singleton* v. *Perry, supra,* 45 Cal.2d at pp. 497-498, italics added.) The *Singleton* court then concluded, "We agree with the foregoing reasoning, and conclude that plaintiff, having shown that defendant maliciously joined an unjustified charge with a justified charge, does not have the further burden of showing that her damage was specifically attributable to the malicious prosecution as opposed to the prosecution which the jury found was not malicious." (*Id.,* at p. 498. See also *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 55-57 [529 P.2d 608, 65 A.L.R.3d 878], relying on *Singleton* v. *Perry* to hold that a defendant may be liable for malicious prosecution if plaintiff can prove that just one of three theories of liability contained in the defendant's cross-complaint in a civil action was brought without probable cause.)

Although *Singleton* and *Bertero* involved actions for malicious prosecution rather than for wrongful termination, and although they involved situations in which multiple counts or charges were made both with and without probable cause, rather than the situation here in which plaintiff was allegedly terminated for multiple illegal reasons, one of which is preempted by the NLRA and the rest of which are not, we believe the same principle, i.e., that a defendant should not escape liability when the plaintiff, because of the defendant's wrongful acts, is unable to point to one particular wrongful act or reason as the cause of his harm, applies, *so long as the state court is not required, in adjudicating plaintiff's claims, to exercise any power which might threaten to interfere with the policy of obtaining uniform interpretation and application of federal labor law.*

Although defendants cite several cases in which it was held that preemption was necessary to obtain such a uniform interpretation and application of federal labor law, those cases are distinguishable from the facts here.

*Friday* v. *Hughes Aircraft Co.* (1986) 188 Cal.App.3d 117 [236 Cal.Rptr. 291] involved a nonsupervisorial employee who was discharged and who thereafter brought suit in state court for wrongful termination and intentional infliction of emotional distress, alleging that one reason he had been denied promotion was because of his complaints regarding volatile chemi-

cals. The defendant employer moved for summary judgment on the ground of federal preemption under section 301 of the Labor Management Relations Act. (29 U.S.C. § 141(a).) The motion was granted, and on appeal judgment against the plaintiff was affirmed, the court holding that disposition of the plaintiff's claims in state court would have required the state court to interpret article XXI of the collective bargaining agreement, and such state interpretation of a collective bargaining agreement would directly interfere with federal regulation of disputes arising out of such agreements. Here, in contrast, defendants have not argued that Balog's action is preempted under section 301, undoubtedly because Balog's complaint does not require application and interpretation of the collective bargaining agreement.

In *Bassett* v. *Attebury, supra,* 180 Cal.App.3d 288, the plaintiff, a former executive producer of television shows at KTTV, sued his former employer and supervisor for, inter alia, wrongful termination. The defendants moved for summary judgment on the ground that his wrongful termination claims were based on federal law violations, and were therefore preempted by federal law entrusting the NLRB with exclusive jurisdicton. The motion was granted and judgment was entered for defendants. On appeal, the judgment was affirmed. The reviewing court concluded that although Bassett was a supervisor, he had alleged that he had been disciplined for union-related factors (e.g., because he knew defendants had committed serious violations of state and federal law in connection with a recent union election, and defendants wished to discredit or silence him), and therefore his cause of action was preempted under the NLRA. In *Bassett,* unlike the case here, the only reason alleged for the plaintiff's termination was clearly related to the plaintiff's union activity or potential activity on behalf of the union; there were no allegations that the plaintiff was terminated for other, nonunion-related but illegal, reasons.

In *Henry* v. *Intercontinental Radio, Inc., supra,* 155 Cal.App.3d 707, the plaintiff was a supervisor, who alleged in his state action for wrongful termination that he had been fired in violation of California Labor Code sections 1101, 1102, 922 and 923, which state that no employer shall interfere with employees' political activities, and that no one shall coerce or compel another person to agree not to become a union member as a condition of securing or continuing employment. He also alleged that a significant contributing factor in the decision to terminate him was his employers' perception that he was working to bring a union to the station. His action was held to be preempted under sections 7 and 8 of the NLRA (29 U.S.C. §§ 157, 158), despite the plaintiff's implicit argument that his organizational efforts were "political activities" which could form the basis for an independent action which would not be preempted by the Act. According to the reviewing court, "the extent to which these activities, rather than

his unionization activities (*assuming it is possible to separate the two*), were 'significant contributing factors' to his discharge is a question committed in the first instance to the NLRB. Being unpersuaded that the instant action is of merely peripheral concern to federal labor policy, or that there exists here a compelling interest so deeply rooted in local law as to justify the interference with federal labor law that prosecution of the instant action would entail, we conclude that appellant's causes of action are 'arguably' unfair labor practices within the exclusive primary jurisdiction of the NLRB. Absent any allegation that the NLRB had declined to exercise jurisdiction in this matter, the trial court's sustaining of [the] demurrer on these grounds is correct." (*Id.,* at p. 715, italics added.)

It is apparent that the court in *Henry* concluded that the plaintiff's "political activities" were undertaken for the purpose of furthering his unionization activities, that therefore his claims that his employer had violated California Labor Code sections related to political and union activity were directly related to his unionization activities, and that his employer's act in discharging him for such other activities was therefore "arguably" (if not clearly, in our opinion) also an unfair labor practice preempted under the Act.

Here, on the other hand, there is no indication that Balog's refusal to commit violations of California statutes, related to health and safety, were in any way related to any unionization activities. In fact, unlike the plaintiff in *Henry,* who specifically pleaded that he was fired because his employer perceived that he was working to bring a union to the workplace, Balog has not pleaded that he was engaged in unionization activity, but has instead pleaded that he refused to commit a variety of illegal and unethical acts, one of which happened to be, under federal law, an unfair labor practice. Furthermore, unlike the *Henry* plaintiff's California Labor Code violations causes of action, Balog's refusal to commit safety and health violations and his subsequent discharge are not even "arguably" unfair labor practices as defined by the NLRA, and state vindication of the right of employees to refuse to commit such violations without being discharged is of merely peripheral concern, if that, to federal labor policy.

Here, defendants should not be able to escape the jurisdiction of California courts simply because, in addition to allegedly undertaking violations of health and safety regulations which are of compelling local importance and interest, they had the good fortune to also undertake the commission of NLRB-defined unfair labor practices.

Furthermore, retaining jurisdiction over Balog's wrongful termination action will not require the state court to exercise any power which might interfere with the policy behind preemption, i.e., the need to obtain uniform

interpretation and application of federal labor law. The only issue related to the unfair labor practices-related reason for Balog's discharge which the trier of fact need reach is whether or not that reason was the *only* cause for Balog's discharge. If the trier of fact determines that such was the sole reason, then the action is indeed preempted, and the court cannot proceed any further: it cannot award Balog damages or fashion any other remedy. If, however, it determines that Balog was discharged for the other illegal reasons alleged, which are not related to unfair labor practices under the NLRA, then the action is *not* preempted, and defendants will be liable to Balog for damages caused by a wrongful discharge which was motivated in whole or in part by such other illegal reasons.

Our decision in this regard is supported by the recent decision of *Barnick* v. *Longs Drug Stores, Inc.* (1988) 203 Cal.App.3d 377 [250 Cal.Rptr. 10], in which the plaintiff filed a complaint for wrongful termination, breach of contract, conversion, and breach of the implied covenant of good faith and fair dealing. During discovery, plaintiff stated that his employer had fired him to prevent his ERISA-governed pension and profit-sharing plan from fully vesting. Thereafter, the defendant employer moved for summary judgment on the basis of this evidence, contending that the action was preempted by federal law related to ERISA. The defendant's motion was granted, and the plaintiff appealed. On review, Division One of this district noted that all five causes of action repeated the general allegation about the existence of the pension and profit-sharing plan, and therefore met the criteria for preemption set forth in 29 United States Code section 1144(a). It then went on to state: "If that were all there was to this lawsuit, it would clearly be preempted by ERISA. [¶] However, the first two causes of action—for breach of [employment] contract and wrongful termination—actually include more than one theory of liability and damages. In each of these first two causes of action, [plaintiff] *also relies on theories that have no relationship to the plan.* In his first cause of action, [plaintiff] alleges [defendant] *violated its employment policies and procedures, which are unrelated to its profit sharing plan,* in terminating him and thereby deprived him of income and benefits due to him under the contract, as well as under the plan. Similarly, in his second cause of action, [plaintiff] alleges [defendant] *terminated him because he refused to violate certain state statutes* and thereby deprived him of income and benefits due to him under the employment contract. *Thus, [plaintiff] has stated a breach of contract cause of action and a wrongful termination cause of action that are independent of the profit sharing plan and should not be preempted.* To the *extent* that [plaintiff's] first two causes of action refer to the profit sharing plan, they are preempted." (*Id.,* at p. 383, fns. omitted, italics added.)

Given the foregoing, it is apparent that Balog need not, and should not, be allowed to amend his complaint so as to delete all reference to the

activities which constituted unfair labor practices. It is also apparent that the complaint as it currently stands *does* state a cause of action which is not preempted by the NLRA, and that judgment on the pleadings should not have been entered in favor of defendants and against Balog. In sum, without more, Balog is entitled to go to trial on his present complaint.

In its petition for rehearing, defendants urge that our decision was based on an issue not proposed or briefed, i.e., that Balog will be entitled to damages if he can prove that his discharge was motivated in whole or in part by illegal reasons.

Our decision was not based on the above issue. It was based on our interpretation of applicable law which led us to conclude that to the extent Balog's complaint stated causes of action not based on violations of the NLRA, his complaint was not preempted. The issue of whether or not the entire complaint was preempted because it referred to an unfair labor practice as one reason for Balog's discharge *was* briefed by the parties.

Defendants also urge that the statement in the opinion that "defendants will be liable to Balog for damages caused by a wrongful discharge which was motivated in whole or in part by such other illegal reasons [i.e., illegal reasons which are not also unfair labor practices]" is an incorrect statement of the law. According to defendants, the correct test in employment cases is not an "in whole or in part" test, but rather a "but for" test—in other words, an employee must show that but for the illegal reason, he or she would not have been terminated.

Defendants' concern ignores the context in which we stated that Balog would be entitled to recover damages for wrongful termination if his discharge was motivated in whole or in part by illegal reasons not preempted by the NLRA. Taken in context, the statement simply means that Balog may be entitled to recovery if he can show that his discharge was motivated in whole or in part by the nonpreempted reasons *as opposed to the preempted unfair labor practice reason*. The cases cited by defendants for the proposition that a plaintiff must meet the "but for" test are not applicable to a situation involving only wrongful reasons, some preempted and some not preempted. ■ Instead, the cases relied upon by defendants (e.g., *Bekiaris* v. *Board of Education* (1972) 6 Cal.3d 575 [100 Cal.Rptr. 16, 493 P.2d 480]; *Mt. Healthy Board of Ed.* v. *Doyle* (1977) 429 U.S. 274 [50 L.Ed.2d 471, 97 S.Ct. 568]; *Miller* v. *Chico Unified School Dist.* (1979) 24 Cal.3d 703 [157 Cal.Rptr. 72, 597 P.2d 475]) involve situations in which employees were discharged or reassigned based on both wrongful *and legitimate* reasons. In such cases, use of a "but for" test (i.e., that the employee would not have been discharged, despite the legitimate reasons, but for the wrongful reasons) has the salutary effect of not putting a less-than-adequate employee

in a better position than a competent employee simply because the less competent employee may be a member of a minority or may have exercised constitutionally protected but employer-disfavored rights. As the court in *Mt. Healthy Board of Ed.* v. *Doyle, supra,* 429 U.S. 274, 285-286 [50 L.Ed.2d 471, 482-483, 97 S.Ct. 568, 575-576] pointed out, "A rule of causation which focuses solely on whether protected conduct played a part, 'substantial' or otherwise, in a decision not to rehire, could place an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing. . . . The constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct." ■ Therefore, to make it as clear as possible, we hold that as long as Balog's refusal to commit an unfair labor practice was not the sole reason for his termination, he may recover for a wrongful discharge based on the other reasons alleged in his complaint if such reasons were in whole or in part the motivation for his termination, and that he need not show, *in comparison to the unfair labor practice reason,* that he would not have been fired "but for" the nonpreempted reasons.

If defendants ever assert in their defense that Balog's employment was terminated for some legitimate reason, they may then wish to urge the use of a "but for" test. That, however, was not the issue presented by this appeal.

## DISPOSITION

The judgment is reversed, and the trial court is directed to vacate its order granting defendants' motion for judgment on the pleadings and to enter a new and different order denying said motion.

Campbell, P. J., and Dabney, J., concurred.

A petition for a rehearing was denied September 20, 1988.