[No. B136917. Second Dist., Div. Four. Oct. 11, 2000.]

JIM RUSCIGNO, Plaintiff and Appellant, v.
AMERICAN NATIONAL CAN COMPANY, INC., Defendant and
Respondent.

## COUNSEL

Hamrick & Evans, A. Raymond Hamrick III and Raymond C. Dion for Plaintiff and Appellant.

Thelen Reid & Priest, David L. Bacon and Remy Kessler for Defendant and Respondent.

## OPINION

**VOGEL (C. S.), P. J.—**

### INTRODUCTION

Plaintiff Jim Ruscigno appeals from the judgment entered in favor of defendant American National Can Company, Inc., after defendant's demurrer was sustained without leave to amend.[1] Plaintiff's suit arose out of the termination of his employment by defendant. Plaintiff alleged he was terminated because he testified unfavorably to defendant during an employee's grievance proceeding held pursuant to a collective bargaining agreement. The trial court sustained defendant's demurrer on the ground that plaintiff's complaint is preempted by the National Labor Relations Act (29 U.S.C. § 151 et seq.; hereafter NLRA.) and exclusive primary jurisdiction over the matter is vested in the National Labor Relations Board. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts alleged in plaintiff's complaint are assumed to be true for the purpose of demurrer. A demurrer admits all facts properly pleaded, but not contentions, deductions, or conclusions of fact or law. (*Freis v. Soboroff* (2000) 81 Cal.App.4th 1102, 1104 [97 Cal.Rptr.2d 429].) Plaintiff alleged: Plaintiff began working for defendant in April 1975, pursuant to an employment contract that was part oral, written, implied in fact, and implied in law. Plaintiff alleged he understood and reasonably relied on the representation that his employment would continue indefinitely unless and until said employment was terminated for good cause. As required by law, defendant was at all times obligated to act in good faith and deal fairly with plaintiff with respect to his employment.

---

[1]Steven R. Clover was named individually as a defendant in plaintiff's complaint. However, he apparently was not served with the complaint and, in any event, is not a party to this appeal.

Plaintiff was employed as a supervisor, and at the time of his termination, was one of the most senior production supervisors at defendant's plant. He alleged that he had come to expect that he would have a job with defendant until his retirement; defendant's employees had an expectation of continued employment so long as they performed their duties in a satisfactory manner. On his annual reviews plaintiff was "oftentimes" rated excellent or above average; he received yearly raises and bonuses for good performance. Because of his expectation of continued employment, he declined several other offers of employment.

Plaintiff supervised John Adams, an hourly employee. Around December 1996 Adams was arrested by the FBI; during a subsequent search of Adams's company locker a key was found to a room referred to as the new shipping office. Adams was first suspended and later terminated for, among other things, unauthorized possession of the key.

In mid-1997, plaintiff first learned from some unspecified individuals that Adams was accused of unauthorized possession of the key. Plaintiff told those individuals that he had given Adams the key so he could perform certain duties in setting up the new shipping office.

Arbitration proceedings were filed involving the termination of Adams, which proceedings included review of Adams's unauthorized possession of the key, and Adams's alleged falsification of his employment application. Plaintiff was instructed to appear as a witness in the arbitration proceedings. Plaintiff alleged he was "concerned about giving sworn testimony" and "initially resisted attempts to compel his testimony for fear that it would materially effect [sic] his continued employment." He spoke with his immediate supervisor, the assistant plant manager, and expressed concern about testifying. His supervisor told him he should not worry and that " 'you [plaintiff] won't be fired and, if you are, you will own the Company.' "

Plaintiff testified at the arbitration proceeding that he had given Adams the key. Defendant's counsel told the arbitrator that the company could not vouch for plaintiff's testimony, and that plaintiff was called to testify in order to cross-examine him about his statements that he had given Adams the key.

The arbitrator's decision was rendered in October 1997. The arbitrator concluded that defendant had just cause to discharge Adams because he had lied on his employment application. The arbitrator stated that plaintiff's testimony appeared to be truthful.

Shortly thereafter, the plant manager delivered a letter to plaintiff informing him that he was being placed "on notice about your recent actions in the

Adams matter." The letter stated plaintiff "told a union official in the presence of several hourly employees in the lunchroom that you [plaintiff] had given the key to the new shipping office to Adams . . ." and that "[y]ou [plaintiff] were grossly disloyal to the Company in not telling management of this discussion." Plaintiff alleges that, in fact, he told the plant manager about the conversation the next time he and the plant manager worked together. The letter further stated that "[y]our [plaintiff's] statements were refuted by other management personnel." The plant manager stated that ". . . my faith, trust and confidence in your ability to perform your job as a supervisor has been brought into serious question."

In January 1998, plaintiff was told by the plant manager that his employment was being terminated, effective immediately. Plaintiff alleged his termination was pretextual in that defendant purported to terminate him because of a reduction in work force, whereas he "was terminated for other and improper reasons including, without limitation the fact that [defendant] was displeased with [plaintiff's] sworn testimony in the arbitration proceedings and wished to punish [plaintiff] for his sworn testimony as well as influence other employees should they ever be in a similar situation." Plaintiff alleged that, during the meeting at which plaintiff was informed of his termination, the plant manager confirmed that plaintiff was being terminated because of his testimony in the Adams arbitration proceedings. Defendant stated in a letter to plaintiff that his termination was simply a reduction in work force. However, plaintiff's position was filled by another employee with substantially less experience than plaintiff, and defendant continued to hire supervisors.

Plaintiff's first cause of action was for breach of the employment contract. He alleged that at all relevant times he "performed in accordance with his obligations pursuant to the Employment Contracts, and all conditions to the performance of [defendant] have occurred, or the occurrence thereof has been prevented or excused as a result of the wrongful acts or omissions of [d]efendant . . . ." Defendant breached the employment contract in that it wrongfully terminated plaintiff's employment as alleged and deprived plaintiff of the benefits thereof, failed and refused to act in good faith and deal fairly with plaintiff with respect to the employment contract, and committed or permitted others to commit the wrongful acts and omissions as alleged.

Plaintiff stated a second cause of action for wrongful termination in violation of public policy. He averred that it is the fundamental public policy of California as expressed in its Constitution and statutes (1) that individuals shall not be unlawfully discriminated against in their employment on the

grounds of being a witness in a legal proceeding or because of testimony offered in a legal proceeding; and (2) that the pursuit of any lawful business, calling or profession shall not be intentionally interfered with. "[T]he reason given for [p]laintiff's termination was pretextual for other, undisclosed and improper reasons in that the termination was on account of the testimony provided under oath by [p]laintiff in a legal proceeding brought against [defendant]."

Plaintiff pled a third cause of action for tortious breach of the implied covenant of good faith and fair dealing. Therein he alleged that as implied by law, defendant covenanted with plaintiff to do nothing to deprive him of benefits due under the employment contract, but by acting and failing to act as alleged, defendant breached the implied covenant of good faith and fair dealing.

Finally, plaintiff stated fourth and fifth causes of action for intentional and negligent infliction of emotional distress.

Defendant demurred to the complaint. Defendant contended that plaintiff's complaint is preempted by the National Labor Relations Act (29 U.S.C. § 151 et seq.) and exclusive primary jurisdiction over the matter is vested in the National Labor Relations Board (NLRB) because plaintiff claims he was discharged solely for giving testimony adverse to defendant's interest during an arbitration, held pursuant to a collective bargaining agreement, regarding an employee's grievance. Defendant asserted separately as to each of plaintiff's five causes of action that the trial court did not have subject matter jurisdiction because the claims are barred by the exclusive primary jurisdiction of the NLRB.

In conjunction with its demurrer, defendant filed a request that the trial court take judicial notice of the collective bargaining agreement which governed the grievance proceedings regarding Adams during which plaintiff testified, and of the opinion and award of the arbitrator in the Adams matter.

Plaintiff filed opposition to the demurrer, disputing that his complaint was subject to federal preemption. Defendant filed reply papers, and the matter was heard in May 1999.[2] The complaint was dismissed without leave to amend by order filed May 17, 1999. Defendant later moved for an order entering judgment, and judgment was entered in favor of defendant in October 1999. This appeal followed.

---

[2]The record before us does not include a reporter's transcript of the hearing.

## DISCUSSION

 Defendant contends that California state courts have no jurisdiction over any of the causes of action stated in plaintiff's complaint because they are within the exclusive jurisdiction of the NLRB under the federal preemption doctrine announced in *San Diego Unions v. Garmon* (1959) 359 U.S. 236 [79 S.Ct. 773, 3 L.Ed.2d 775].

 "In *Garmon*, the United States Supreme Court established 'general guidelines' for determining the permissible scope of state regulation of activity touching upon labor-management relations, and held that when an activity is arguably prohibited or protected by section 7 or section 8[3] of the National Labor Relations Act as amended (NLRA) (29 U.S.C. § 151 et seq.), the state courts must defer to the exclusive competence of the NLRB in order to avoid state interference with national labor policy. (359 U.S. at p. 245 [3 L.Ed.2d at p. 783].) More recently, the court has refined its preemption analysis and has held that where the alleged conduct falls within the 'arguably prohibited' prong of the *Garmon* preemption test, the critical inquiry is 'whether the controversy presented to the state court is identical to . . . or different from . . . that which could have been, but was not, presented to the Labor Board.' (*Sears, Roebuck & Co.* v. *Carpenters* (1978) 436 U.S. 180, 197 [56 L.Ed.2d 209, 225-226, 98 S.Ct. 1745].)" (*Kelecheva v. Multivision Cable T.V. Corp.* (1993) 18 Cal.App.4th 521, 527-528 [22 Cal.Rptr.2d 453].)

"When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the [NLRA], or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield." (*San Diego Unions v. Garmon, supra*, 359 U.S. 236, 244 [79 S.Ct. at p. 779].) "If the Board decides, subject to appropriate federal judicial review, that conduct is protected by § 7, or prohibited by § 8, then the matter is at an end, and the States are ousted of all jurisdiction." (*Id.* at p. 245 [79 S.Ct. at p. 780].)

 According to defendant, plaintiff's action is preempted by the NLRA because it arguably involves an unfair labor practice, i.e., that

---

[3]Title 29 United States Code section 157 (referred to as section 7) provides: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ."

Title 29 United States Code section 158 (referred to as section 8) provides in subdivision (a)(1) that it shall be an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title."

The NLRA defines employees as not including any individual employed as a supervisor. (29 U.S.C. § 152(3); see *Balog v. LRJV, Inc.* (1988) 204 Cal.App.3d 1295, 1302 [250 Cal.Rptr. 766].)

defendant terminated plaintiff for giving testimony favorable to Adams during an arbitration held pursuant to a collective bargaining contract. We agree.

In *Parker-Robb Chevrolet, Inc. and Automobile Salesmen's Union* (1982) 262 NLRB 402, enforced by *Automobile Salesmen's Union v. N.L.R.B.* (D.C. Cir. 1983) 711 F.2d 383 [229 App.D.C. 105], the NLRB addressed the issue of whether and under what circumstances the discharge of a supervisor violates the NLRA. The NLRB declared: "Notwithstanding the general exclusion of supervisors from coverage under the Act, the discharge of a supervisor may violate section 8(a)(1) in certain circumstances," although none of those circumstances was present in the case before it. (*Parker-Robb Chevrolet, Inc. and Automobile Salesmen's Union, supra,* 262 NLRB at p. 402.) "Thus, an employer may not discharge a supervisor for giving testimony adverse to an employer's interest either at an NLRB proceeding or *during the processing of an employee's grievance under the collective-bargaining agreement.*[4] Similarly, an employer may not discharge a supervisor for refusing to commit unfair labor practices, or because the supervisor fails to prevent unionization. In all these situations, however, the protection afforded supervisors stems not from any statutory protection inuring to them, but rather from the need to vindicate employees' exercise of their section 7 rights." (*Id.* at pp. 402-403, italics added, fns. omitted.) "[W]hen a supervisor is discharged for testifying at a Board hearing or a contractual grievance proceeding, for refusing to commit unfair labor practices, or for failing to prevent unionization, the impact of the discharge itself on employees' section 7 rights, coupled with the need to ensure that even statutorily excluded individuals may not be coerced into violating the law or discouraged from participating in Board processes or grievance procedures, compels that they be protected despite the general statutory exclusion." (*Id.* at p. 404.)

"In the final analysis, the instant case, and indeed all supervisory discharge cases, may be resolved by this analysis: The discharge of supervisors is unlawful when it interferes with the right of employees to exercise their rights under section 7 of the Act, *as when they give testimony adverse to their employers' interest* or when they refuse to commit unfair labor practices." (*Parker-Robb Chevrolet, Inc. and Automobile Salesmen's Union, supra,* 262 NLRB 402, 404, italics added.)

Plaintiff contends that his case is not subject to preemption because his termination, and in fact the arbitration proceedings regarding Adams, did not

[4]In a footnote, the NLRB cited for this proposition, with which we are concerned here, the cases of *Ebasco Services, Inc.* (1970) 181 NLRB 768 and *Rohr Industries, Inc.* (1975) 220 NLRB 1029.

involve conduct protected by section 7 or prohibited by section 8 of the NLRA. He argues: "Adams'[s] proceedings simply involved alleged falsification of an employment application and theft of company property. Obviously aware of the fact that the NLRB would not exercise jurisdiction over these proceedings, in part, because the underlying proceedings did not involve an exercise of Adams'[s] right to engage in concerted activities for mutual aid and protection, [defendant] now seeks to invoke the protection afforded by the preemption argument through reliance on the insinuation that the purported interference with underlying proceedings is governed by section 7 and section 8 of the NLRA. However, preemption is not appropriate in this case. There was no alleged actual or intended interference with the Adams'[s] proceedings." (Fn. omitted.)

The distinction plaintiff attempts to rely on is ineffectual; the nature of the events which give rise to the arbitration proceeding regarding an employee, at which arbitration a supervisor testifies and for which the supervisor is terminated, are not determinative. In *Ebasco Services, Inc., supra,* 181 NLRB 768, some 40 employees were discharged for alleged poor production (not a matter which in itself implicates the NLRA). Most of the employees filed grievances, and a formal hearing on the grievances was scheduled. The official entity established to conduct the hearing requested the appearance of several foremen. However, their superintendent told the foremen that if they attended the hearing they would no longer be supervisors, preventing them from working without a foreman being present. In other words, they would lose status and would receive a reduction in their hourly rate.

The employer disputed that the demotion of the supervisors interfered with the employees' statutory rights to have all pertinent testimony presented before the board under the contract grievance procedure. The NLRB disagreed, affirming and adopting the decision of the trial examiner. That decision stated: "It is well settled that discharge of a supervisor for testifying in proceedings under the Act is a coercion of nonsupervisory employees in violation of section 8(a)(1), where the employees knew he gave testimony or the circumstances show they had good reason to believe they might suffer a similar fate if they gave testimony, for such conduct has a tendency to obstruct and impede the Board in its investigative and trial procedures, and to deprive employees of their right to seek vindication by Board process of their statutory rights. General Counsel argues that the same rule should apply where employees resort to contract grievance procedures to vindicate their rights under such contract, and supervisors take it on themselves to appear before tribunals created under those procedures. This argument has merit, for the Act itself recognizes and favors employees' right to use, and actual use

of, contract grievance procedures to settle labor disputes, and so do the courts. The Board has specifically protected employees from employer interference with their right to resort to such procedures under contracts, as well as procedures before outside tribunals, to enforce contract rights, on the theory that the filing of claims by employees in either instance was a form of implementation of the collective bargaining agreement and thus an extension of the concerted activity which gave rise to that agreement. . . . Therefore, it appears to be no more than a reasonable extension of the above principle and Board policy to say that employees have a corollary right to a full and fair hearing on their grievances under contract procedures which must likewise be protected from interference or limitation." (*Ebasco Services, Inc.,* *supra,* 181 NLRB 768, 769-770, fns. omitted.) The employer's "order for [the supervisors] not to attend, followed by the announcement of their demotion before the employees' representative, and climaxed by their actual demotion, was conduct which had a substantial tendency to inhibit employees in the exercise of one of their important rights under the contract, protected by the Act, but which on the facts in this record had no countervailing importance in maintaining continuance of operations at the project." (*Id.* at p. 770.)

In *Illinois Fruit & Produce Corp.* (1976) 226 NLRB 137, two employees were discharged for leaving work at the end of their shift but without securing permission to do so. A supervisor gave testimony favorable to the employees at a grievance hearing, contrary to the instructions given him by management, and was terminated. The NLRB affirmed the decision of the administrative law judge finding that the employer violated section 8(a)(1) of the NLRA by discharging the supervisor.

Similarly in the case before us, plaintiff was discharged for giving testimony during a grievance proceeding held pursuant to a collective bargaining contract. The nature of events giving rise to that grievance proceeding were of no consequence to the finding that the actions taken against the supervisors interfered with protected rights of the employees.[5]

Plaintiff further contends that discharging a supervisor is not unlawful under the NLRA unless the supervisor was coerced into violating the law or discouraged from participating in labor proceedings. He argues that he "has specifically alleged facts demonstrating that [plaintiff] was encouraged to

---

[5]In any event, we note that Adams contended in the arbitration proceedings regarding his discharge that he was not afforded certain protections guaranteed under the "Justice and Dignity" clause of the collective bargaining agreement. Thus, while the reason for his discharge was not related to an unfair labor practice, the arbitration proceeding did address the issue of whether Adams was subjected to an unfair labor practice.

testify and to testify truthfully in the Adams'[s] proceedings. Moreover, there are no allegations that [plaintiff] was coerced into violating the law or discouraged from participating in a Board or grievance procedure. Consequently, there are no facts suggesting that [defendant] sought, through [plaintiff], to interfere with Adams'[s] rights." (Fns. omitted.) We disagree with plaintiff's contention that the facts as pleaded in his complaint fail to demonstrate that he was discouraged from participating in labor proceedings by way of his after-the-fact termination.

Plaintiff relies on *Pontiac Osteopathic Hospital* (1987) 284 NLRB 442, in which an employee was discharged for writing a satirical newsletter critical of management. The employee's supervisor was also discharged for the stated reason that she had not supported the management decision to discharge the employee. At no time was the supervisor asked to carry out the discharge or in any way participate in the discipline. Under these circumstances, the NLRB reversed the finding of the administrative law judge that the supervisor's discharge violated section 8(a)(1) of the NLRA. "[W]e are faced with the question of whether the discharge of a supervisor for failure to support management action amounting to an unfair labor practice constitutes a violation of the Act. The judge concluded that it did, reasoning that there was no difference between discharging a supervisor for refusing to commit an unfair labor practice and discharging a supervisor for failing to support management action amounting to an unfair labor practice. We disagree with the judge's conclusion. When an employer asks a supervisor to commit an unfair labor practice, the supervisor is forced to choose between violating the law or disobeying the employer's request—a choice that could lead to discipline or discharge. Consequently, in such situations, an employer is able to pressure a supervisor into violating the law on its behalf. On the other hand, when a supervisor, acting on his or her own initiative, chooses to express disapproval of a management policy, the supervisor is not coerced at all (i.e., he or she has not been forced to choose between violating the law or risking the consequences of the employer's wrath). Admittedly, the discharge in either situation may have a secondary effect on the employees' exercise of their Section 7 rights, but there is no need to protect the supervisor from coercion when the supervisor is acting on his or her own initiative. As we found in [*Parker-Robb Chevrolet, Inc. and Automobile Salesmen's Union, supra,* 262 NLRB 402], it is the need to ensure that statutorily excluded employees are not coerced into violating the law or discouraged from participating in Board or grievance proceedings that compels protection for supervisors. As we find that [the supervisor] was in no way coerced into violating the law or discouraged from participating in Board or grievance procedures here, her discharge was not a violation of

the Act." (*Pontiac Osteopathic Hospital, supra,* 284 NLRB 442, 443, fns. omitted.)

Plaintiff points to the fact that in *Pontiac Osteopathic Hospital* the employee had requested that the supervisor testify at an appeals board meeting, but the supervisor "was informed that she could not appear at those proceedings on behalf of the employee." Even then, the NLRB found the employer's actions did not violate the NLRA. However, in contrast to the case before us, the NLRB observed that while the supervisor was discouraged from testifying at the appeals board proceedings, "those proceedings, as the judge found and we affirm, were not proceedings implemented pursuant to a collective-bargaining agreement, to which we would be willing to defer. . . . Consequently, they are not proceedings that enjoy recognition under the Act. Further, as noted, [the supervisor] was not even asked, let alone required, to participate in those proceedings in support of the [employer's] position." (*Pontiac Osteopathic Hospital, supra,* 284 NLRB at p. 469, fn. 7.)

Thus, it was important to the NLRB's decision in *Pontiac Osteopathic Hospital* that the appeals board proceedings regarding the employee were not held pursuant to a collective bargaining agreement; the NLRB indicates that otherwise the outcome would have been different. While the NLRB also noted that the supervisor was not asked to testify at the proceedings on behalf of the employer, other cases make clear that such a request is not a prerequisite to a finding that a supervisor has been discouraged from participating in grievance procedures in violation of the NLRA.

For example, in *Rohr Industries, Inc., supra,* 220 NLRB 1029,[6] an employee initiated grievance proceedings, as was his right under a collective bargaining agreement, regarding alleged violation of seniority rules set forth in the union agreement. The employee's supervisor, as requested by a union business representative, supplied a statement favorable to the employee which was submitted at the arbitration. Management had no knowledge of the fact the supervisor had provided a statement before it was presented at the arbitration, and the subject of the employee's grievance hearing was not discussed by the supervisor and management prior to the arbitration. The supervisor was laid off shortly after the arbitration. Despite the absence of any conduct by the employer intended to discourage the supervisor from participating in the proceedings prior to the arbitration, the NLRB affirmed

---

[6]*Rohr Industries, Inc.,* is one of the cases cited with approval in *Parker-Robb Chevrolet, Inc. and Automobile Salesmen's Union, supra,* 262 NLRB at pages 402-403, and 406, footnote 6, for the tenet that an employer may not discharge a supervisor for giving testimony adverse to an employer's interest during the processing of an employee's grievance under a collective bargaining agreement.

the order of the administrative law judge finding that the layoff of the supervisor violated sections 7 and 8 of the NLRA. In his decision, the judge noted that various departmental workers were aware of the supervisor's layoff and considered his termination chargeable directly to the fact he gave a statement supportive of the employee's grievance. (*Rohr Industries, Inc., supra,* 220 NLRB at p. 1038.) Thus, other employees could readily conclude that they would suffer a similar fate for participating in grievance proceedings, in violation of section 7.

Similarly in the present case, plaintiff alleged in his complaint that management accused him of stating to a union official, in the presence of several employees, that he had given Adams the key to the new shipping office. Other employees were thus aware of the situation and could infer that they would also suffer termination if they testified adversely to defendant in future grievance proceedings. Although plaintiff was instructed by defendant to testify, and to do so honestly, at the hearing, the direct interference with employees' rights under the NLRA was still palpable given plaintiff's termination for testifying unfavorably to defendant.

Plaintiff urges that even if his causes of action sounding in tort[7] are preempted, his causes of action for breach of contract and for breach of the implied covenant of good faith and fair dealing[8] are not. He relies on *Kelecheva v. Multivision Cable T.V. Corp., supra,* 18 Cal.App.4th 521, in which the appellate court decided that the trial court had erred in ruling that the plaintiff supervisor's causes of action for breach of an implied contract to terminate for cause and for breach of the covenant of good faith and fair dealing were preempted. However, plaintiff's reliance on *Kelecheva* is misplaced.

In *Kelecheva,* a supervisor was discharged for the sole reason that he refused to engage in union busting activity. The Court of Appeal readily concluded that the supervisor's attempt to assert a state law cause of action for wrongful discharge in violation of public policy was clearly preempted. (*Kelecheva v. Multivision Cable T.V. Corp., supra,* 18 Cal.App.4th at p. 528.) However, the court concluded as a matter of first impression that under the circumstances present there, preemption of the supervisor's contract-based claims was not required.

---

[7]These include plaintiff's second cause of action for wrongful discharge in violation of public policy, and his fourth and fifth causes of action for intentional and negligent infliction of emotional distress.

[8]Plaintiff actually attempted to state a third cause of action for *tortious* breach of the implied covenant. For purposes of this appeal, we will consider this to have been an error which plaintiff theoretically could correct on remand. However, as we explain, we find that the entirety of plaintiff's complaint, whether sounding in contract or tort, is preempted.

■ "[T]he [United States] Supreme Court has held that the NLRA does not preempt state court jurisdiction of state law breach of contract claims against an employer where the controversy presented to the state court is not identical to that which could be presented to the NLRB." (*Kelecheva v. Multivision Cable T.V. Corp., supra,* 18 Cal.App.4th at p. 530, citing *Belknap, Inc. v. Hale* (1983) 463 U.S. 491, 511-512 [103 S.Ct. 3172, 3183-3184, 77 L.Ed.2d 798].) The *Kelecheva* court concluded that the supervisor could present a state law controversy which was not identical to what could be presented to the NLRB. ■ "Plaintiff is asking the state court to determine whether defendant breached an implied-in-fact contract by terminating his employment without adequate notice or good cause. The state court inquiry would be directed first to the existence of the implied contract, which would turn on factors such as the duration of plaintiff's employment, defendant's personnel policies and practices, and plaintiff's performance history, commendations, merit raises, and promotions. (*Foley* [*v. Interactive Data Corp.* (1988)] 47 Cal.3d [654,] 680-682 [254 Cal.Rptr. 211, 765 P.2d 373]; see also *Pugh* v. *See's Candies,* [*Inc.* (1981)] 116 Cal.App.3d [311,] 326-327 [250 Cal.Rptr. 195].) On the issue of breach, the state court litigation would focus on whether plaintiff, in fact, violated employer work rules relating to insubordination and unsatisfactory performance, and whether defendant honored other implied-in-fact commitments as to warnings, grievance procedures, and fair treatment. Plaintiff's contract cause of action does *not* require any showing of an unlawful motive for the alleged breach, and he would only be entitled to contractual remedies if he proves his case. (See *Foley, supra,* 47 Cal.3d at pp. 699-700, fn. 41 . . . .)

■ "The controversy before the state court on plaintiff's claim for breach of the covenant of good faith and fair dealing would also be distinctly different from the litigation of an unfair labor practice charge that might have been, but was not, presented to the NLRB. If plaintiff is able to establish the existence of an employment agreement, California law will supply a covenant of good faith and fair dealing, which requires that neither party do anything to deprive the other of the benefits of the agreement. (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, 768 [206 Cal.Rptr. 354, 686 P.2d 1158].) A breach of the covenant may then be established, inter alia, by a showing that defendant engaged in ' ". . . bad faith action, extraneous to the contract, with the motive intentionally to frustrate the [employee's] enjoyment of contract rights, . . ." ' including the right to continued employment absent good cause for discharge. (*Hejmadi* v. *AMFAC, Inc.* (1988) 202 Cal.App.3d 525, 549 [249 Cal.Rptr. 5], quoting *Sawyer* v. *Bank of America* (1978) 83 Cal.App.3d 135, 139 [145 Cal.Rptr. 623].) The state court inquiry on this claim would likely

focus on whether defendant failed to follow its own personnel policies and/or falsified the asserted grounds for discharge. (*Kerr* v. *Rose* (1990) 216 Cal.App.3d 1551, 1561-1562 [265 Cal.Rptr. 597]; *Pugh* v. *See's Candies, Inc.*[, *supra*,] 203 Cal.App.3d 743, 764.) Although evidence of defendant's antiunion animus may be relevant to·plaintiff's claim of breach of the covenant of good faith and fair dealing, plaintiff would *not* be required to prove that defendant, in fact, discharged him for reasons that would violate federal or state labor law. Additionally, only contract remedies would be available if plaintiff establishes his right to recover under this theory. (*Foley, supra*, 47 Cal.3d at p. 700.)" (*Kelecheva v. Multivision Cable T.V. Corp., supra*, 18 Cal.App.4th at pp. 531-532.)

If plaintiff is allowed to amend to plead an implied in fact contract, he will bear the burden of showing that such contract existed. The factors required to prove an implied in fact employment contract include duration of employment, evaluations by supervisors, employment history, commendations, merit raises, promotions, and respondent's personnel policies. (*Kelecheva v. Multivision Cable T.V. Corp., supra*, 18 Cal.App.4th at p. 531.) It is probable that plaintiff will be able to produce sufficient evidence to show the existence of an implied in fact contract based on his 23 years of employment and his supervisorial position and other aspects of his employment history.

If plaintiff's evidence of implied in fact contract is sufficient to show a prima facie case of wrongful termination, "[t]he burden of coming forward with evidence as to the reason for appellant's termination now shifts to the employer." (*Pugh v. See's Candies, Inc., supra*, 116 Cal.App.3d 311, 329.) Plaintiff may "attack the employer's offered explanation, either on the ground that it is pretextual (and that the real reason is one prohibited by contract or public policy [citation]), or on the ground that it is insufficient to meet the employer's obligations under contract or applicable legal principles." (*Id.* at pp. 329-330.)

In the present matter, if plaintiff proves a prima facie case, the burden would shift to defendant to show good cause for plaintiff's termination, whether it is evidence of work force reduction or otherwise. Defendant's showing will surely be challenged as pretextual by plaintiff with evidence that his termination was retaliatory for his testimony in the Adams arbitration. Therefore, unlike the court in *Kelecheva*, we cannot conclude that "[t]he controversy before the state court on plaintiff's claim for breach of the covenant of good faith and fair dealing would also be *distinctly* different from the litigation of an unfair labor practice charge that might have been, but was not, presented to the NLRB." (*Kelecheva v. Multivision*

*Cable T.V. Corp.*, *supra*, 18 Cal.App.4th 521, 531, italics added.) Nor may we conclude, based on the record before us, that plaintiff would not be "required to prove that defendant, in fact, discharged him for reasons that would violate federal or state labor law." (*Id.* at p. 532.) Without evidence that his termination was based on his testifying in the Adams arbitration, he simply cannot challenge defendant's showing of "good cause."

It is unrealistic to assume that plaintiff would forego the introduction of such critical evidence to counter defendant's presumed excuse that plaintiff was terminated simply as part of company downsizing. In other words, the evidence in the state court would *not be distinctly* different than the evidence that would be presented to the NLRB. It would be the same and it implicates sections 7 and 8 of the NLRA. Therefore, plaintiff's claim is perforce preempted by the NLRB.

### DISPOSITION

The judgment is affirmed.

Curry, J., concurred.

**EPSTEIN, J.**—I dissent because I believe that appellant can state a cause of action that is not preempted by federal law. I agree that his tort claims are preempted by the National Labor Relations Act (29 U.S.C. § 151 et seq.) under the *Garmon* theory. (*San Diego Unions v. Garmon* (1959) 359 U.S. 236 [79 S.Ct. 773, 3 L.Ed.2d 775].) But that does not end the matter.

Plaintiff has pleaded that his employment arrangement with defendant gave him a right of continued employment, terminable only for cause, and he claims that he was terminated in violation of that arrangement. This sets up a simple suit for breach of contract. The majority takes the position that defendant will claim that plaintiff's termination was the result of a reduction in work force, and that plaintiff will counter with an assertion that this reason is pretextual, set up to mask the real reason—that he was fired because he testified against the company at an arbitration hearing. Since that hearing was conducted pursuant to a collective bargaining agreement, the majority reasons, the exclusive jurisdiction of the National Labor Relations Board would be invoked.

I suspect that defendant's principal defense will be that plaintiff was an at-will employee, and, as such, that he was terminable without the necessity of a showing of cause. It is not unlikely that defendant will tender the pretext issue the majority anticipates. The issue before us is whether that

prospect ousts the state court of jurisdiction if plaintiff's action is for breach of contract alone. *Kelecheva v. Multivision Cable T.V. Corp.* (1993) 18 Cal.App.4th 521 [22 Cal.Rptr.2d 453] addressed substantially the same question, and concluded that *Garmon* does not require preemption of the contract-based claim. (*Id.* at p. 529.) I believe *Kelecheva* was correctly decided and is not meaningfully distinguished from this case. I therefore would reverse the trial court's order of dismissal, and remand to allow plaintiff to plead a single cause of action for breach of contract.