[No. A116544. First Dist., Div. Four. Jan. 18, 2008.]

RICHARD B. LUKE, Plaintiff and Appellant, v.
COLLOTYPE LABELS USA, INC., Defendant and Respondent.

COUNSEL

Law Offices of Randal M. Barnum and Randal M. Barnum for Plaintiff and Appellant.

Dickenson, Peatman & Fogarty, Brandon R. Blevans and Marlo S. Cohen for Defendant and Respondent.

**OPINION**

**RUVOLO, P. J.—**

## I.

## INTRODUCTION

Richard B. Luke (Luke) appeals from a summary judgment in favor of Collotype Labels USA, Inc. (Collotype). Luke brought the underlying action for wrongful termination in violation of public policy against Collotype. The trial court granted Collotype's motion for summary judgment on the basis that Luke's claims were preempted by the National Labor Relations Act[1] (NLRA). We affirm.

---

[1] Title 29 United States Code section 151 et seq.

## II.

## PROCEDURAL BACKGROUND

Luke filed a complaint against Collotype in which he alleged two causes of action for wrongful termination in violation of public policy, one based on Labor Code[2] section 923, and the other on section 232.5. Collotype filed a motion for summary judgment, based on the sole ground that both causes of action were preempted by the NLRA. The court granted the motion and entered judgment in Collotype's favor, finding that the complaint alleged "nothing more than unfair labor practices that are preempted by federal law and, therefore, are not properly heard in this tribunal." This timely appeal followed.

## III.

## FACTUAL BACKGROUND

The facts set forth in Collotype's separate statement of material facts in support of its motion for summary judgment are undisputed. Collotype manufactures premium wine and liquor labels. It has sales volume in excess of $19 million, and employs 70 people in Napa. It hired Luke as a maintenance engineer in 2003.

On September 6, 2005,[3] Collotype suspended Luke for three days based on the allegation that Luke was not honest about having his position covered during a planned absence. Luke disagreed with Collotype's allegation, asserting he had been available by cell phone. On September 8th, Luke sent an e-mail to Nigel Vinecombe, the group managing director for Collotype's office in Australia, titled "trouble brewing." In it, Luke stated: "Sorry to bother you. I usually go through my chain of command, but this will not work here at this plant. Would you please call me?"

On September 9th, Collotype terminated Luke's employment. The company gave him a termination memorandum which stated in part: "People have come forward and let us know that you have been soliciting signatures for a

---

[2] Unless otherwise noted, all subsequent undesignated state statutory references are to the Labor Code.

[3] Unless otherwise noted, all further dates referenced are in 2005.

letter denouncing the management of the company. You are making your peers uncomfortable and clearly being insubordinate. [¶] You also sent an e-mail to the Group Managing Director in Australia, without consulting anybody on the U.S. management team proclaiming that there was 'trouble brewing.' [¶] Your behavior over the past couple of weeks is extremely disturbing to those around you and cannot be tolerated. The team environment [at] Collotype is essential, and we cannot have people bringing others down in an intentional effort to undermine the company. [¶] Effective today, your employment at Collotype is being terminated for blatant insubordination and conduct detrimental to the team."

In his complaint, Luke alleged that two of Collotype's employees "had expressed concerns to [him] about certain unfavorable working conditions. . . . [Luke] verbally told [the employees] that they should keep a record of problems they encountered and express their concerns to management. . . . [Collotype] apparently learned that [Luke] was a 'sympathetic ear' for the complaints of certain employees." At his deposition, Luke testified that he believed Collotype terminated his employment because he "provid[ed] support and ideas to other employees who complained about working conditions and being passed over for promotions, and . . . so that [Collotype] could hire another individual, Vance Jones, to take [Luke's] position." He also testified that other employees complained to him about "certain working conditions such as heat, bathroom availability, no seating during breaks and lunch, and promotion decisions."

## IV.

## DISCUSSION

Luke asserts that the trial court erred in granting Collotype's motion for summary judgment on his cause of action for wrongful termination in violation of the public policy set forth in section 232.5.[4] We review " 'the record de novo and independently determin[e] whether [the] decision is correct. [Citation.]' . . ." (*Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 418 [42 Cal.Rptr.3d 807], citation omitted.) We " 'independently determine the construction and effect of the facts presented to the trial judge as a matter of law.' " (*City of West Hollywood v. 1112 Investment Co.* (2003) 105 Cal.App.4th 1134, 1142 [130 Cal.Rptr.2d 168], quoting *Rosse v. DeSoto Cab Co.* (1995) 34 Cal.App.4th 1047, 1050 [40 Cal.Rptr.2d 680].)

---

[4] Luke has "abandoned his cause of action for wrongful termination in violation of . . . section 923."

Luke alleged that his termination violated the following public policy, set forth in section 232.5: "No employer may do any of the following: [¶] . . . [¶] . . . Discharge, formally discipline, or otherwise discriminate against an employee who discloses information about the employer's working conditions." (§ 232.5, subd. (c).) Collotype concedes for the purposes of this appeal that "Section 232.5 states a sufficient policy on which to base [Luke's] Second Cause of Action." The only issue, then, is whether Luke's cause of action for wrongful termination, in violation of a public policy of this state, is preempted by the NLRA.[5] (See *Kelecheva, supra,* 18 Cal.App.4th at p. 527.)

## A. NLRA Preemption

The preemption doctrine is derived from the supremacy clause, which states that the " 'laws of the United States . . . shall be the supreme law of the land; and the judges in every State shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding.' . . ." (*Morrison v. Viacom, Inc.* (1997) 52 Cal.App.4th 1514, 1519 [61 Cal.Rptr.2d 544], citation omitted, quoting U.S. Const., art. VI, § 2, some capitalization omitted.) "Where the pre-emptive effect of federal enactments is not explicit, 'courts sustain a local regulation "unless it conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States." ' . . ." (*Metropolitan Life Ins. Co. v. Massachusetts* (1985) 471 U.S. 724, 747–748 [85 L.Ed.2d 728, 105 S.Ct. 2380], citation omitted, quoting *Allis-Chalmers Corp. v. Lueck* (1985) 471 U.S. 202, 209 [85 L.Ed.2d 206, 105 S.Ct. 1904].)

While the NLRA contains no express preemption provision, the Supreme Court mandates that state courts " 'must defer to the exclusive competence of the National Labor Relations Board in cases in which the activity that is the subject matter of the litigation is arguably subject to the protections of [section] 7 or the prohibitions of [section] 8 of the [NLRA].' " (*Linn v. Plant Guard Workers* (1966) 383 U.S. 53, 60 [15 L.Ed.2d 582, 86 S.Ct. 657].) Section 7 of the NLRA guarantees employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ." (29 U.S.C. § 157.) Section 8 of the NLRA

---

[5] "California courts have long recognized a cause of action sounding in tort for wrongful discharge in violation of public policy . . . but ha[ve] limited it to include only those claims of wrongful discharge which allegedly violate a fundamental public policy embodied in constitutional or statutory provisions. [Citation.]" (*Kelecheva v. Multivision Cable T.V. Corp.* (1993) 18 Cal.App.4th 521, 527 [22 Cal.Rptr.2d 453] (*Kelecheva*).)

makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in" section 7. (29 U.S.C. § 158(a)(1).)

## B. Concerted Activities Under the NLRA

Luke argues that his cause of action should not be preempted because his discussions with other employees regarding working conditions were not "concerted activities" protected by the NLRA. Collotype maintains "allegations of the same conduct . . . would constitute an unfair labor practice under the NLRA." Specifically, it claims the conduct for which Luke was terminated fell into the category of "other concerted activities for the purpose of . . . other mutual aid or protection . . . ." (29 U.S.C. § 157.)

■ Discussions among employees regarding their working conditions have been held to be protected activity under the NLRA. For example, in *Aroostook County v. N.L.R.B.* (1996) 317 U.S. App.D.C. 114 [81 F.3d 209] (*Aroostook*), the employer "conditioned the rehiring of the fired employees upon their agreement that they would bring all of their complaints to [him], that they would avoid any discussions with particular employees, and that they would cease all 'gossiping and complaining' amongst themselves." (*Id.*, 81 F.3d at p. 215.) The court held "[t]he effect that these conditions likely would have had on the employees' ability to engage in behavior that is protected under the NLRA is so obvious that [the employer] has not seriously attempted to defend the legitimacy of the conditions as imposed." (*Ibid.*) Luke attempts to distinguish this case, claiming that "the court in *Aroostook* held that a rule requiring employee grievances to be discussed in private and only with managers or employers was not, in itself, an unfair labor practice." The issue of the employer's rules was a separate issue from the conditions on rehiring the fired employees. *Aroostook* explained that "[i]n a small medical practice, such as [here], the employer has unique concerns about employees acting in a way that might disturb patients; in this situation, a rule prohibiting employees from voicing complaints in front of patients is neither surprising nor unlawful. [Citation.]" (*Id.*, at p. 213.) Employee discussions among themselves regarding working conditions, however, were held to be protected under the NLRA. (81 F.3d at p. 215.)

Likewise, in *Needell & McGlone, P.C.* (1993) 311 N.L.R.B. 455, a law firm terminated a clerical worker because she was " 'being a spokesperson

and a ringleader for other secretaries and trying to alienate them from another secretary.' " (*Id.* at p. 456.) The employee had engaged in discussions with other secretaries about what she perceived to be the preferential treatment received by the other secretary. (*Ibid.*) The National Labor Relations Board held that the employer discharged her because it believed "she was engaged in concerted activities which, by their nature, are protected by the [NLRA]." (*Ibid.*)

Here, Luke alleged he discussed working conditions with other employees. Two other workers "had expressed concerns to [him] about certain unfavorable working conditions." Luke advised the employees to keep a record of problems they encountered and "express their concerns to management." At his deposition, Luke testified that he believed Collotype terminated his employment because he "provid[ed] support and ideas to other employees who complained about working conditions and being passed over for promotions." Luke not only engaged in concerted activities when he discussed working conditions with coworkers, but also when he encouraged them to keep records and bring their complaints to management. His activities were certainly "arguably protected" by the NLRA.

### C. Exceptions to NLRA Preemption of Causes of Action for Wrongful Termination in Violation of Public Policy

Luke argues that his cause of action for wrongful termination in violation of California public policy falls within an exception to the general rule of NLRA preemption.

The Supreme Court has articulated two distinct exceptions to the broad preemptive effect of the NLRA. The first was set forth in *San Diego Unions v. Garmon* (1959) 359 U.S. 236 [3 L.Ed.2d 775, 79 S.Ct. 773] (*Garmon*). In that case, the court explained that Congress did not intend to deprive "[s]tates of [the] power to regulate where the activity regulated was a merely peripheral concern of the . . . Act . . . [o]r where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." (*Id.* at pp. 243–244, fn. & citation omitted.) "*Garmon* pre-emption involves balancing the State's interest in controlling or remedying the effects of the conduct in question against the interference with the [National Labor Relations] Board's ability to adjudicate controversies committed to it by the Act, and the risk that the State will sanction conduct that the Act protects. [Citation.]" (*Metropolitan Life Ins. Co. v. Massachusetts, supra,* 471 U.S. at pp. 748–749, fn. 26.) "Cases following *Garmon* have clarified that the preemption issue as to both

arguably prohibited and arguably protected conduct 'turns primarily on whether preemption is necessary to avoid conflicting adjudications which would interfere with the regulatory activity of the administrative board.' " (*Hillhaven Oakland Nursing etc. Center v. Health Care Workers Union* (1996) 41 Cal.App.4th 846, 855 [49 Cal.Rptr.2d 11], quoting *Kaplan's Fruit & Produce Co. v. Superior Court* (1979) 26 Cal.3d 60, 69–70 [160 Cal.Rptr. 745, 603 P.2d 1341].) ▪ The second preemption doctrine, articulated in *Machinists v. Wisconsin Emp. Rel. Comm'n* (1976) 427 U.S. 132 [49 L.Ed.2d 396, 96 S.Ct. 2548], held that state laws and state causes of action are preempted when they concern conduct that Congress intended to leave unregulated. (*Id.* at p. 140.)

Some courts have made the blanket statement that "wrongful discharge claims based on public policy violations are not preempted by federal labor laws . . . ." (*Saridakis v. United Airlines* (9th Cir. 1999) 166 F.3d 1272, 1278; see also *Garibaldi v. Lucky Food Stores, Inc.* (9th Cir. 1984) 726 F.2d 1367, 1374 (*Garibaldi*) [limited to claims involving § 301 of the Labor-Management Relations Act, 1947 (29 U.S.C. § 185) (LMRA), as noted in *Vincent v. Trend Western Technical Corp.* (9th Cir. 1987) 828 F.2d 563, 565–566]; *Paige v. Henry J. Kaiser Co.* (9th Cir. 1987) 826 F.2d 857, 864 (*Paige*).) Other cases, however, have recognized only a narrower exception to preemption, in instances in which the state public policy violated was regarding health and safety. Employees' "claims for wrongful discharge in retaliation for complaining about unsafe work conditions are not preempted by the NLRA. [Citations.]" (*Haney v. Aramark Uniform Services, Inc.* (2004) 121 Cal.App.4th 623, 633, fn. 3 [17 Cal.Rptr.3d 336].)

▪ When a cause of action for wrongful termination in violation of public policy does not involve health and safety laws, however, courts have held the claims are preempted by the NLRA. (See *Ruscigno v. American National Can Co.* (2000) 84 Cal.App.4th 112, 118 [100 Cal.Rptr.2d 585] [preemption of action for wrongful termination in violation of public policy against discrimination based on "being a witness in a legal proceeding or because of testimony offered in a legal proceeding"]; *Rodriguez v. Yellow Cab Cooperative, Inc.* (1988) 206 Cal.App.3d 668 [253 Cal.Rptr. 779] (*Rodriguez*) [preemption of action for wrongful termination in violation of public policy based on employee's testimony before the Public Utilities Commission and involvement in class action]; *Kelecheva, supra,* 18 Cal.App.4th at pp. 528–529 [preemption of employee's cause of action for wrongful termination in violation of public policy based on his refusal to participate in employer's antiunion harassment].)

The apparent inconsistency in outcomes appears to arise from two important distinctions, which are not delineated in most cases. First, there is a

difference between public policy wrongful termination claims in cases involving section 301 of the LMRA[6] and those claims involving section 7 or 8 of the NLRA. (*Rodriguez, supra,* 206 Cal.App.3d at p. 679.) "In section 301 cases the action is preempted if it is based on the meaning of a collective bargaining agreement. (*Lingle* v. *Norge Div. of Magic Chef, Inc.* (1988) 486 U.S. 399, 405 [100 L.Ed.2d 410, 108 S.Ct. 1877].) . . . [W]here there is no collective bargaining agreement, the preemption question turns not on the characterization of the action but the nature of the activity called into question: is it arguably protected by the NLRA?" (*Rodriguez, supra,* at pp. 679–680.) As the court in *Rodriguez* explained, "Preemption under the NLRA and the LMRA occurs in different contexts and involves distinct considerations. [Citation.]" (*Id.* at p. 679.) Accordingly, those cases regarding preemption under section 301 of the LMRA, many of which are relied on by Luke, are not relevant to the issue presented here regarding NLRA preemption. (See, e.g., *Paige, supra,* 826 F.2d at p. 864; *Garibaldi, supra,* 726 F.2d at p. 1374; *Abreu v. Svenhard's Swedish Bakery* (1989) 208 Cal.App.3d 1446 [257 Cal.Rptr. 26]; see also *Deschene v. Pinole Point Steel Co.* (1999) 76 Cal.App.4th 33 [90 Cal.Rptr.2d 15].)

■ Second, not all public policy wrongful termination cases are created equal for purposes of determining whether they are preempted by the NLRA. As previously noted, where the public policy at issue involves employee complaints under, or refusal to violate, state occupational safety and health laws, causes of action for wrongful termination in violation of this public policy are not preempted. (*Haney v. Aramark Uniform Services, Inc., supra,* 121 Cal.App.4th at p. 633; *Paige, supra,* 826 F.2d at p. 864; *Inter-Modal Rail Employees Assn. v. Burlington Northern & Santa Fe Ry. Co.* (1999) 73 Cal.App.4th 918, 928 [87 Cal.Rptr.2d 60].) Cases alleging wrongful termination in violation of other public policies of the state may be preempted, however, where the violation of state public policy also constitutes an unfair labor practice under the NLRA but is not an issue deeply rooted in local feeling and responsibility. (See, e.g., *Kelecheva, supra,* 18 Cal.App.4th at pp. 528–529; *Ruscigno v. American National Can Co., supra,* 84 Cal.App.4th 112; *Rodriguez, supra,* 206 Cal.App.3d 668.) Despite the broad language in *Paige, Garibaldi,*[7] and other cases cited above, there is no blanket exception to NLRA preemption for all causes of action for wrongful termination in violation of state public policy.

---

[6] Title 29 United States Code section 185.

[7] These cases, in fact, have been criticized in this district. "[W]e think *Paige* and *Garibaldi* are poorly reasoned. . . . The court focuses entirely on the state interest and fails to consider . . . whether the employer's conduct was arguably prohibited by the NLRA . . . ." (*Rodriguez, supra,* 206 Cal.App.3d at p. 680.)

Luke attempts to bring his cause of action within an exception to preemption by arguing that "the complaints for which [he] was fired involved unsafe working conditions," relying on *Balog v. LRJV, Inc.* (1988) 204 Cal.App.3d 1295 [250 Cal.Rptr. 766] (*Balog*). In *Balog*, a supervisor alleged he was terminated for five reasons, one of which constituted an unfair labor practice under the NLRA. The other four reasons "all involve[d] various . . . California health and safety regulations," which he refused to violate, "thereby refusing to endanger the health and safety of California workers." (204 Cal.App.3d at p. 1304.) The court held that the employer's conduct "touche[d] interests deeply rooted in local feeling and responsibility," and therefore the four causes of action premised on such conduct were not preempted, even though one cause of action was preempted by the NLRA. (204 Cal.App.3d at p. 1304.)

Luke maintains on appeal that the causes of action he alleged were regarding health and safety issues, which he identifies as "discussions with fellow employees about working conditions, including complaints about inadequate bathroom facilities, lack of adequate meal break facilities, the facility being too hot and the lack of equipment such as a desk, chair or computer to perform the training functions."

■ This argument is unavailing. Luke specifically alleged that he was fired in contravention of the public policy expressed in section 232.5. He did not allege in his complaint, nor testify in his deposition, that Collotype terminated his employment because he had complained about Collotype's "violations of California health and safety regulations." (*Balog, supra*, 204 Cal.App.3d 1295, 1304; see *Inter-Modal Rail Employees Assn. v. Burlington Northern & Santa Fe Ry. Co., supra*, 73 Cal.App.4th at p. 922.) Moreover, Luke did not allege in his complaint that he was fired because of his own complaints to management regarding unsafe working conditions. Luke alleged instead that complaints about working conditions were made *to* him by two fellow employees, and management perceived he was a " 'sympathetic ear' " because he had advised the employees to keep notes to "protect" themselves, and to bring their complaints to management. The activities for which Luke was fired do not fall within the "health and safety" exception to NLRA preemption.

Accordingly, Luke's complaint for wrongful termination in violation of California public policy is preempted by the NLRA.

## V.

## DISPOSITION

The judgment is affirmed.

Reardon, J., and Sepulveda, J., concurred.