Filed 12/7/22  Mendones v. Washington Hospital Healthcare System CA1/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| MARIDOL C. MENDONES,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>WASHINGTON HOSPITAL HEALTHCARE SYSTEM,<br><br>    Defendant and Respondent. | A165164<br><br>(Alameda County<br> Super. Ct. No. HG19013225) |

Maridol C. Mendones appeals from an order and judgment of dismissal in favor of her former employer Washington Hospital Healthcare System (WHHS or the hospital).

Mendones contends the trial court erred in sustaining a demurrer to her second amended complaint (SAC) without leave to amend the causes of action for breach of contract, wrongful termination, retaliation, and discrimination.  We agree.  As explained below, we find the SAC alleges a cause of action for retaliation under the Fair Employment and Housing Act (Gov. Code, § 12940; FEHA), and Mendones may be able to amend the SAC to allege causes of actions for breach of contract, wrongful termination, and discrimination under

FEHA (Gov. Code, §§ 12935, 12960). Accordingly, we shall reverse and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Mendones' Employment with WHHS

On July 13, 2015, WHHS hired Mendones as a per diem[2] "staff nurse II" in the medical-surgical and telemetry unit, working under the supervision of a nurse manager. According to Mendones, her "job performance evaluation was outstanding," and she had received a September 2017 "recommendation letter" from her nurse manager.

While working at the hospital, Mendones was a member of the California Nurses Association (CNA), which had a collective bargaining agreement (CBA) with the hospital. The agreement was in the form of a Memorandum of Understanding (MOU), which directed the hospital

---

[1] We set forth only those facts necessary to resolve this appeal. Because an appellant may even rely on statements made for the first time on appeal to demonstrate a reasonable possibility the complaint can be amended to state a cause of action (*Eghtesad v. State Farm General Insurance Co.* (2020) 51 Cal.App.5th 406, 414), we have taken the facts from the SAC's allegations, as well as the factual allegations made in Mendones' trial court opposition to the demurrer and her motion for reconsideration.

By our order of June 20, 2022, we took judicial notice of the superior court record filed in a prior appeal (*Mendones v. Washington Hospital Healthcare System* (dec. Feb. 16, 2022, A162989) [nonpub. opn.]), and deemed it incorporated into the record of this appeal (Cal. Rules of Court, rule 8.147). On our own motion, we take judicial notice of our records on the prior appeal in case No. A162989. (Evid. Code., § 452, subd. (d) ["[j]udicial notice may be taken of the following matters . . . [¶] . . . [¶] (d) Records of (1) any court of this state . . . ."].)

[2] "Per diem" referred to non-benefited employees who worked a flexible or sporadic work schedule and were hired on an as-needed basis.

to furnish CNA with copies of all work rules and rules of conduct pertaining to employees within CNA's jurisdiction; this included Memorandum #2-95 E, titled Employee Disciplinary and Involuntary Separation Procedures (Memo #2-95E).

The MOU included provisions regarding the terms and conditions of employment for per diem nurses, including compensation at minimum rates as set forth in an Appendix A. The MOU also addressed the rules governing a nurse's conduct while employed by the hospital. Specifically, WHHS was granted "the right to assess disciplinary action or discharge any Nurse for just cause"; if, in the opinion of CNA, an employee had been unjustifiably discharged or disciplined, "such discharge . . . or discipline shall be subject to the grievance procedure."

The MOU's "grievance adjustment and arbitration" provision allowed for a review procedure to "cover all Nurse complaints and grievances." The procedure consisted of four steps: Step One – Department Review; Step Two – Administrative Review; Step Three – Grievance Committee; and Step Four – Arbitration. Time limits were set for the filing of grievances and for each step of the review procedure, with the proviso that the time limits could be modified by mutual consent of the concerned parties. Additionally, Memo #2-95E included a provision that in the case of disciplinary action, a nurse's supervisor had the " 'option' " to place the nurse " 'on temporary-indefinite suspension without pay.' "

On November 20, 2017, the hospital's Director of Human Resources informed Mendones that she was being placed on indefinite paid suspension pending an investigation of a complaint concerning her

3

"medication administration."[3]  According to Mendones, the specific complaint concerned her "unusual trend of [cancelling] medication transaction[s]" from an automated medication dispenser,[4] which purportedly resulted in the loss of medication.

Mendones was told to continue to submit a work schedule with her availability and that it would be used to determine her salary consistent with the regulations applicable to her status as a per diem employee under the CBA.  Mendones submitted her work schedules to her nurse manager and was paid based on her submitted work schedules from November 20, 2017 to December 30, 2017.

However, on January 1, 2018, salary payments were stopped without explanation despite Mendones continuing to be on indefinite

---

[3]     Mendones later received two written notices of her suspension, both dated November 29, 2017.  A "notice of disciplinary suspension of employment with pay" informed Mendones that she had been suspended with pay starting November 20, 2017 due to the following circumstances: "Complaint on Medication Administration."  A "notice of investigatory suspension of employment" informed Mendones that she had been suspended with pay for an indefinite period pending investigation of the following circumstances: "Pursuant to Memorandum # 2-95E of Employee Disciplinary [a]nd Involuntary Separation Procedures, the Administrators decided to place you on indefinite paid suspension for Complaint on Medication Administration. [¶] Payment will be based according to your submitted work schedule as requisite for Per Diem employee."

[4]     According to Mendones, the automated medication dispenser is a cart/cabinet containing all medications used throughout the hospital. Each medication cart/cabinet is linked to the main computer maintained by the hospital's Pharmacy Department, where all medication information is stored.  "Staff are given access to the . . . medication unit (medstation) via a password or biometric identification (fingerprint scan)."

4

paid suspension.[5] Mendones inquired of hospital employees concerning the stopped salary payments and her status as an employee but received no response. Consequently, she sought advice from CNA's representatives and counsel. During the last week of February 2018, Mendones filed a report with the California State Department of Industrial Relations Labor Commissioner's Office about WHHS's refusal to pay her salary during her indefinite paid suspension. She did not pursue the claim after learning she was still employed by the hospital.

On April 5, 2018, Mendones sent text messages to her nurse manager. In those messages, she complained that "I'm the only one investigated and yet hundreds of staff accessed the [medication dispenser] where missing pills" were stored. The nurse manager responded "I wish I have [sic] an answer for you Maridol." Mendones sent a response that many others accessed the medication dispenser and did cancellations and yet she was the only one investigated, which was "discrimination." The nurse manager then responded "I'm afraid, yes, it seems like that . . . I'm sorry for you."

After the completion of WHHS's investigation, Mendones was fired on May 16, 2018 for "excessive medication cancellation transaction[s]" resulting in the loss of medication, as well as for violations of patient confidentiality and a violation of the CBA.

---

[5] Mendones further alleged that despite the lack of salary payments, she continued to submit her work schedules, which continued to be accepted by her nurse manager, until she was terminated on May 16, 2018.

5

On May 23, 2018, Mendones asked her nurse manager what provision of the CBA she had violated. Her nurse manager responded that Mendones had violated the CBA by making a report to the Labor Commission regarding her unpaid suspension while she was still employed by the hospital. Mendones responded that she thought she was protected from discharge under the law, indicated her intention to "proceed to step one grievance," and requested the nurse manager's availability to meet and confer as he was responsible for handling that initial step of the grievance procedure.

## B. Trial Court Proceedings

On April 2, 2019, one month after receiving a right to sue letter from the Department of Fair Employment and Housing (DFEH), Mendones filed a complaint against WHHS for monetary damages and other relief. The pleading at issue on appeal is the SAC, filed after the trial court sustained demurrers with leave to amend as to both the complaint and first amended complaint.

The SAC's first four causes of action seek monetary damages for the failure to pay her salary while on indefinite paid suspension and for her later termination. Under the cause of action for breach of contract (first cause of action), Mendones sought monetary relief primarily premised on an allegation that she was entitled to be paid from January 1, 2018 to May 16, 2018 while on indefinite paid suspension (first cause of action). Under the causes of action for wrongful termination, retaliation, and discrimination, Mendones sought monetary relief for her termination, primarily based on allegations that her termination (1) was not based on "just cause" (second cause of action); (2) was retaliation for the protected activity of filing a report

6

with the Labor Commissioner regarding her failure to receive salary payments while on indefinite paid suspension and due to a "pending court action" (third cause of action); and (3) was discriminatorily motivated because there were many staff members, including nurses of Mendones' similar age (over 40), gender (female), and nationality (Filipina), who all performed medication administration in the same manner, but Mendones was the " 'only one' " who was investigated, suspended, and terminated based on medication administration (fourth cause of action). The complaint also included causes of action for professional negligence and defamation.

On October 21, 2020, the trial court sustained the demurrer to the SAC (1) without leave to amend the causes of action for breach of contract, wrongful termination, retaliation, and discrimination, and (2) with leave to amend the causes of action for professional negligence and defamation, except that the demurrer was sustained without leave to amend as to an allegation that WHHS purportedly made defamatory comments about Mendones to the Board of Registered Nursing. The court specifically ordered Mendones to file a third amended complaint (TAC), which pleading was to *exclude* the stricken causes of action, and was to *include only* the fifth (professional negligence) and sixth (defamation) causes of action "within 10 court days of the publication of this order." When Mendones failed to timely file a TAC, WHHS moved ex parte to dismiss the action; in response Mendones filed her TAC, limited to causes of action for professional negligence and defamation, and excluding the stricken causes of action.

On January 8, 2021[6], the court denied WHHS's ex parte motion to dismiss without prejudice and noted the "matter" would be resolved at a case management conference scheduled for February 1. Following that conference, the court dismissed the case without prejudice.

On May 4, Mendones filed a motion seeking reconsideration of the court's adverse rulings on the demurrer to the SAC and a request to file a TAC, limited to causes of action for professional negligence and defamation as permitted by the October 21, 2020 demurrer order. WHHS opposed Mendones' motion and request as both untimely and without merit.

The motion seeking reconsideration was argued and submitted at a May 27 hearing. On June 10, the court issued an order denying the motion for reconsideration as both untimely and without merit. The court also denied the request to file a TAC for failure to timely file the proposed pleading.

On March 14, 2022, the trial court entered an order and judgment (one document) dismissing the action without prejudice. Mendones' timely appeal ensued.[7]

---

[6]   Unless otherwise noted, all future dates were in 2021.

[7]   By her notice of appeal, Mendones seeks review of the March 14, 2022 order and judgment of dismissal, as well as review of the October 21, 2020 order sustaining the demurrer to the SAC (with and without leave to amend) and the June 10, 2021 order denying her motion for reconsideration. We previously dismissed Mendones' earlier attempt to challenge the October 21, 2020 order because the record provided on that prior appeal contained only an unsigned order of dismissal, which was not a valid judgment of dismissal. (*Mendones v. Washington Hospital Healthcare System*, *supra*, A162989 at p. 4.) In our decision (*id*. at p. 6), we informed Mendones that she could file a

Mendones challenges the October 21, 2020 order to the extent that the trial court sustained the demurrer to the SAC without leave to amend the causes of action for breach of contract, wrongful termination, retaliation, and discrimination.

## I. Legal Framework for Review of Demurrer

On appeal, we review the demurrer order de novo,[8] as "[a] demurrer tests the sufficiency of a complaint by raising questions of law." (*Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 517 (*Rodas*).) "Because a demurrer raises only questions of law, ' "an appellant challenging the sustaining of a general demurrer may change his or her theory on appeal [citation], and an appellant court can affirm or reverse the ruling on new grounds. [Citation.] After all, we review the validity of the ruling and not the reasons given." ' " (*Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1018, 1022.)

In resolving the merits of a demurrer, "all material facts pleaded in the complaint and those that arise by reasonable implication, . . . are

---

subsequent appeal if she obtained a valid judgment of dismissal, which she obtained on March 14, 2022.

We dismiss the separate appeals from the October 21, 2020 and the June 10, 2021 orders as they are not separately appealable and are reviewed on the appeal from the March 14, 2022 judgment. (See *Torres v. City of San Diego* (2007) 154 Cal.App.4th 214, 222 ["there can only be *one* 'final judgment' in an action"]; see Code Civ. Proc., § 906 ["[u]pon an appeal pursuant to Section 904.1 or 904.2, the reviewing court may review the . . . decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the right of a party . . . ."].)

[8] Accordingly, we do not separately address Mendones' contention that the trial court erred in denying her motion for reconsideration.

deemed admitted by the demurring party. [Citations.] The complaint must be construed liberally by drawing reasonable inferences from the facts pleaded." (*Rodas, supra*, 87 Cal.App.4th at p. 517.) Where, as in this case, the demurrer is based on a claim that the pleading does not state " 'facts sufficient to constitute a cause of action, the rule is, that if upon a consideration of all the facts stated, it appears that the plaintiff is entitled to any relief at the hands of the court against the defendants, the complaint will be held good, although the facts may not be clearly stated, or may be intermingled with a statement of other facts irrelevant to the cause of action shown, or although the plaintiff may demand relief to which he is not entitled under the facts alleged.' " (*Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572.) "[W]e are not concerned with plaintiff's possible inability or difficulty in proving the allegations of the complaint." (*Ibid.*)

We review the trial court's denial of a request for leave to amend for an abuse of discretion. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) "The appellant has the burden to identify specific facts showing the complaint can be amended to state a viable cause of action. [Citation.] An appellant can meet this burden by identifying new facts or theories on appeal." (*Minnick v. Automotive Creations, Inc.* (2017) 13 Cal.App.5th 1000, 1004; see Code Civ. Proc., § 472c, subd. (a) ["[w]hen any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is open on appeal even though no request to amend such pleading was made"].)[9]

---

[9] We find no merit to WHHS's contention that by filing a TAC, albeit belatedly, Mendones waived any argument that the trial court

10

## II. The Demurrer to the Causes of Action for Breach of Contract and Wrongful Termination was Wrongly Sustained without Leave to Amend

Mendones based her first cause of action for breach of contract on two claims. One, that WHHS had breached an oral and implied agreement or promise to pay her salary during her indefinite paid suspension. Two, that WHHS had breached the following provisions of the CBA: (1) " '[t]he hospital shall notify any nurse who is being suspended from employment of the nurse's right to have a nurse representative present during the formal presentation of such notice of suspension;' " (2) " '[i]f a nurse is dissatisfied with a decision or a condition affecting her employment, the nurse and her authorized representative shall first meet and discuss the matter with her department head;' " (3) after plaintiff was terminated, she was

---

erred by sustaining the demurrer to the SAC without leave to amend the causes of action for breach of contract, wrongful termination, retaliation, and discrimination because she did not include those stricken causes of action in the filed TAC. Unlike *Metzenbaum v. Metzenbaum* (1948) 86 Cal.App.2d 750, and *Gaglione v. Coolidge* (1955) 134 Cal.App.2d 518, cited by WHHS, the trial court here did not sustain the demurrer to the SAC with leave to amend all of the causes of action. Rather, the court specifically sustained the demurrer without leave to amend four causes of action and directed that any new TAC was to include *only* causes of action for professional negligence and defamation, and not the stricken causes of action. Because the court's order did not sustain the demurrer as to the entirety of the SAC, those portions of the order sustaining the demurrer without leave to amend causes of action for breach of contract, wrongful termination, retaliation, and discrimination remain "open on appeal," and Mendones, as "a party aggrieved," "may claim the order as error in an appeal from the final judgment in the action." (Code Civ. Proc., § 472c, subds. (b), (c).)

"'entitled [to have] step one grievance proceeding within '14 calendar days' by her department head/unit manager. . . and thereafter up to Step four grievance;" and (4) WHHS's " '[t]echnology must be consistent with the provision of safe, therapeutic, effective care, which promotes patient safety,' " and " '[t]he manner in which technology is used shall support patient confidentiality.' " The second cause of action for wrongful termination was premised on the allegation that WHHS had breached the CBA's express provision that a nurse could only be terminated for just cause.

In sustaining the demurrer without leave to amend, the trial court found the causes of action for breach of contract and wrongful termination failed to state facts sufficient to support those claims. The trial court also found the claims were governed by section 301 of the Labor Management Relations Act (29 U.S.C. § 185) (hereinafter section 301), which as a general rule directs state courts to apply federal labor law to lawsuits related to CBAs. Applying federal law, the court stated: "It is well established that where a collective bargaining agreement provides for grievance and arbitration procedures in the event of an employment related dispute, those procedures must be exhausted with the timelines provided for in the CBA. Plaintiff has failed to plead exhaustion of the grievance procedures proscribed by the CBA." As we now explain, we conclude the trial court erred as there is an exception to the general rule that an employee use the grievance procedure in the CBA where the employer prevents an employee from exhausting the grievance procedure in a CBA.

Section 301 was enacted to ensure that "collective bargaining agreements would be uniformly interpreted across the nation in

12

accordance with substantive federal labor law." (*Friday v. Hughes Aircraft Co.* (1986) 188 Cal.App.3d 117, 121, citing *Teamsters Local v. Lucas Flour Co.* (1962) 369 U.S. 95, 103-104.) Federal and state courts have concurrent jurisdiction over lawsuits seeking relief for violations of CBAs, but regardless of where the lawsuit is filed, it is governed exclusively by federal law. (*Abreu v. Swenhard's Swedish Bakery* (1989) 208 Cal.App.3d 1446, 1452.)

Here, the trial court properly found the causes of action for breach of contract and wrongful termination were governed by federal labor law as the claims set forth in the SAC are clearly directed at WHHS's purported violation of the MOU.[10] And, as Mendones admitted in her trial court opposition to the demurrer, her claim for salary while on indefinite paid suspension is not based on an "oral [and] implied contract," but rather on WHH's purported violation of the specific term in Memo #2-95E, which allowed but did not require a supervisor to place a nurse on indefinite suspension without pay.[11]

---

[10] We see no merit to Mendones' contention that federal labor law should not apply in this case because she is asserting claims that do not require an interpretation of the CBA. While it is certainly true that "a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement" (*Caterpillar, Inc. v. Williams* (1987) 482 U.S. 386, 396, italics in original), so that there is no need to interpret the terms of the CBA, that is not the situation here.

[11] In the trial court Mendones also asserted her claim for salary while on indefinite paid suspension did not require an interpretation of the CBA based on a theory of promissory estoppel as alleged in the SAC, but she does not renew that argument on appeal. Accordingly, we deem the issue waived or abandoned. (*Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, 128.)

13

The trial court also properly noted the "general rule" that "federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." (*Republic Steel Corp. v. Maddox* (1965) 379 U.S. 650, 652.)  However, the trial court did not take note of the exception to the general rule.  As the high court informs, an employee is not limited to the exclusive remedial procedure established by the CBA "when the conduct of the employer amounts to a repudiation of those contractual procedures." (*Vaca v. Sipes* (1967) 386 U.S. 171, 185.)  "In such a situation . . ., the employer is estopped by his own conduct to rely on the unexhausted grievance and arbitration procedures as a defense to the employee's cause of action."  (*Ibid*.) [12]

On appeal Mendones also contends her claim for salary while on indefinite paid suspension did not require an interpretation of the CBA as the claim is for "promised paid suspension" which is "non-negotiable" under state law.  However, she cites no state law that prohibits the hospital from placing a nurse on indefinite suspension without pay as allowed under Memo #2-95E.  Nor does she cite any case law supporting her argument.  Accordingly, we treat the contention as waived.  (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["[t]he absence of . . . citation to authority allows this court to treat the contention as waived"].)

[12]    While the parties do not cite to *Vaca v. Sipes*, *supra*, 386 U.S. 171, we find the case accurately expresses the principle of law addressing the situation before us.  Because this is a demurrer, we do not need to separately address the parties' related arguments directed at the trial court's ruling regarding Mendones' purported failure to exhaust her remedies under the CBA's grievance procedure.

This is precisely the situation alleged by Mendones, that WHHS breached the CBA by the failure of its employees to comply with her requests to pursue her disputes using the grievance procedure in the CBA. As she stated: "WHHS kept on reasoning for no available dates despite plaintiff's union representatives' diligence of asking, until plaintiff gave up on October 2018." In her trial court opposition to the demurrer, Mendones alleged additional details regarding the circumstances regarding her attempts to invoke the CBA's grievance procedure and WHHS's allegedly unsatisfactory responses. Whether these allegations are true, and whether WHHS is estopped from seeking dismissal of the claims based on a defense of failure to exhaust the grievance procedure, are questions of fact not appropriately determined at the demurrer stage. (See *Stroman v. Atchinson T & S.F. Ry. Co.* (1958) 161 Cal.App.2d 151, 166 [it was for the jury to determine whether the employee's failure to exhaust the collective bargaining grievance procedure should be excused based on the employer's alleged misrepresentations regarding the grievance procedure].)

We therefore conclude the trial court should have sustained the demurrer with leave to amend to allow Mendones the opportunity to file an amended complaint alleging facts in support of her contention that she is entitled to maintain a state court action for breach of contract and wrongful termination as her failure to exhaust the grievance procedure provided in the CBA was due to WHHS's repudiation of the grievance procedure. Whether Mendones will be able to plead and ultimately prove that her claims for breach of contract and wrongful termination may be adjudicated in this state

15

court action due to WHHS's repudiation of the CBA's grievance procedure is not before us on this appeal.

## III.  The Demurrer to the Cause of Action for Retaliation under FEHA Should Be Overruled

Mendones seeks to reinstate the cause of action for retaliation under FEHA on the basis that the SAC includes sufficient factual allegations to state such a cause of action.

To state a cause of action for retaliation under FEHA, a plaintiff must allege (1) engagement in protected activity, (2) resulting in an adverse employment action, and (3) a causal connection between the protected activity and the adverse employment action.  (*Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1443; see Gov. Code, § 12940.)

In sustaining the demurrer without leave to amend the cause of action for retaliation under FEHA, the trial court found the SAC did not include allegations identifying a " 'protected activity' " and did not allege any causal relationship between a protected activity and the adverse employment action at issue (termination of employment).  In fact, however, the SAC *does* state sufficient facts to withstand demurrer as it alleges, in pertinent part, that Mendones' termination was retaliation for her protected activity — filing a report with the Labor Commissioner regarding her failure to receive salary payments while on indefinite paid suspension.

We see no merit to WHHS's contention that the demurrer was properly sustained because Mendones was not terminated based on the filing of the report with the Labor Commissioner.  While WHHS asks us to consider its letter to Mendones stating she was terminated for violating a provision of the CBA (not for filing a report with the Labor

16

Commissioner), Mendones does not concede or admit this was a valid basis for her termination. A demurrer cannot be converted "into an incomplete evidentiary hearing" in which the demurring party can rely on documentary evidence and "the opposing party is bound by what that evidence appears to show." (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 115.)

Accordingly, we conclude the demurrer to the cause of action for retaliation under FEHA should have been overruled as the SAC contains sufficient allegations to support such a claim – that termination was based on the protected activity of filing a report with the Labor Commissioner.[13]

## IV. The Demurrer to the Cause of Action for Discrimination Under FEHA Should Be Sustained with Leave to Amend

Mendones also seeks to reinstate the cause of action for discrimination under FEHA to amend the pleading to include the requisite jurisdictional allegations.

As a jurisdictional prerequisite to the filing of a discrimination action under FEHA, a plaintiff has the burden to plead (and ultimately prove) timely exhaustion of administrative remedies, such as the filing of a complaint with the DFEH and obtaining a right to sue letter from the DFEH. (See *Kim v. Konad USA Distribution, Inc.* (2014) 226 Cal.App.4th 1336, 1345-1346; see Gov. Code, §§ 12935, 12960.) Here, the trial court properly sustained the demurrer to the cause of action

---

[13] We need not, and do not, address whether the SAC's allegations are also sufficient to state a cause of action for retaliation based on claim that the termination was due to the protected activity of a " 'pending court case.' "

17

for discrimination under FEHA as the SAC did not include necessary jurisdictional allegations, including that Mendones had received a right to sue letter from the DFEH before filing her original complaint.

However, the record shows that Mendones, in opposing the demurrer to the SAC, explicitly asserted she had received a DFEH right to sue letter before filing her original complaint. And, in her motion for reconsideration, she attached both a DFEH complaint and a DFEH right to sue letter. Accordingly, while the demurrer was properly sustained, the trial court abused its discretion in failing to grant Mendones leave to amend to include the necessary jurisdictional allegations regarding her exhaustion of administrative remedies by the filing of a DFEH complaint and the receipt of a right to sue letter from the DFEH.

In addition, we see no merit to WHHS's argument that we should affirm dismissal of the cause of action for discrimination under FEHA because the SAC does not otherwise contain sufficient substantive factual allegations to support a claim for discrimination under the disparate treatment theory.

To state a cause of action for discrimination under the disparate treatment theory, a plaintiff must set forth facts showing " 'actions taken by the employer from which one can infer, if the actions remain unexplained, that it is more likely than not that such actions were "based on a [prohibited] discriminatory criterion . . . ." ' " (*Ibarbia v. Regents of University of California* (1987) 191 Cal.App.3d 1318, 1327.) The elements of the cause of action include allegations that the plaintiff was (1) "a member of a protected class," (2) "performing competently in the position . . . held;" (3) who "suffered an adverse employment action,

18

such as termination . . . . ;" and (4) "some other circumstance suggest[ing] discriminatory motive." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355.)

In support of its argument for affirmance, WHHS contends the SAC does not include allegations that Mendones was a member of a protected class and that she was performing competently in the position she held in the hospital. We disagree. The SAC includes allegations that Mendones was a member of a FEHA protected class in terms of age, gender, race and nationality – over 40 years of age, female, and of Filipino ancestry; and that she had been hired at WHHS as a "staff nurse II per diem," and her "job performance evaluation was outstanding and in fact, she had a recommendation letter made by her nurse manager, . . . dated September 26, 2017."

Additionally, the SAC includes allegations that Mendones had suffered adverse employment decisions (indefinite suspension and then termination); and circumstances suggesting a discriminatory motive for the adverse employment decisions based on allegations that WHHS had purportedly investigated only the administration of medications by Mendones, excluding all other staff nurses – some of whom were in the same protected class – who had also administered medications during the shifts in which medications had been lost. Also, in her motion for reconsideration Mendones submitted a text message of her nurse manager's affirmative response to her allegation that she had been the subject of a discriminatory investigation resulting in her indefinite suspension and termination.

Whether Mendones will ultimately be able to prove that WHHS conducted a discriminatory investigation of her administration of

19

medication is not before us. We hold only that she has alleged sufficient substantive facts to withstand demurrer.[14]

## V.    Conclusion

In sum, the order and judgment of dismissal should be reversed as Mendones has alleged a cause of action for retaliation under FEHA and may be able to allege causes of actions for breach of contract, wrongful termination, and discrimination under FEHA. On remand, the trial court will be directed to amend its October 21, 2020 demurrer order, by (a) vacating those portions as sustained the demurrer without leave to amend causes of action for breach of contract, wrongful termination, retaliation and discrimination, and (b) substituting provisions overruling the demurrer to the cause of action for retaliation under FEHA and sustaining the demurrer with leave to amend causes of action for breach of contract, wrongful termination, and discrimination under FEHA.

Because Mendones will be filing a third amended complaint and leave to amend may be granted at any time "in furtherance of justice," and on any terms as may be proper (Code Civ. Proc., §473), we deem it appropriate to direct the trial court to allow the new pleading to include causes of action for professional negligence and defamation, as permitted by the October 21, 2020 demurrer order.[15]

---

[14]    We need not, and do not, address whether the SAC's allegations are also sufficient to state a cause of action for discrimination under a disparate impact theory.

[15]    In light of our determination, we need not and do not address Mendones' additional arguments.

20

## DISPOSITION

The separate appeals from the October 21, 2020 and June 10, 2021 orders are dismissed.

The March 14, 2022 order and judgment of dismissal is reversed and the matter is remanded for further proceedings.  On remand, the trial court is directed to vacate so much of its October 21, 2020 order as sustained the demurrer to the second amended complaint without leave to amend causes of action for breach of contract, wrongful termination, retaliation, and discrimination.  The trial court shall enter a new order (1) overruling the demurrer to the cause of action for retaliation under the Fair Employment and Housing Act (Gov. Code, § 12940); and (2) sustaining the demurrer to the second amended complaint with leave to amend causes of action for discrimination under the Fair Employment and Housing Act (Gov. Code, §§ 12935, 12960), and causes of action for breach of contract and wrongful termination.  The trial court is also directed to include in its new order a provision that any amended third complaint may include causes of action for professional negligence and defamation as permitted by the October 21, 2020 order.

The parties shall bear their own costs.  (Cal. Rules of Court, rule 8.278(a)(3), (5).)

_____
                                                        Petrou, J.


WE CONCUR:


_____
Tucher, P.J.


_____
Fujisaki, J.


A165164/*Mendones v. Washington Hospital Healthcare System*